IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAYLA THOMAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) CASE NO. 2:11-CV-245-WKW [WO] | |
| | ) | |
| NANCY BUCKNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is brought by several individuals whose names were allegedly placed on a quasi-public state registry of persons "indicated" as child abusers. Their chief grievance is that they were not given a hearing prior to being listed and have not had an opportunity to exonerate themselves. Their claims implicate, among other legal concepts, whether *state* regulations or statutes allegedly requiring a hearing trigger due process procedural protection under the Fourteenth Amendment to the *federal* Constitution. Plaintiffs claim damages and prospective relief through 42 U.S.C. § 1983, and have sued state entities, state agency directors in their official capacities, and state case workers in their individual and official capacities. Plaintiffs must successfully navigate several doctrines, which include standing (both constitutional and prudential), sovereign and qualified immunity, and the rigors of a procedural due process claim. The case is pending on a motion to dismiss filed by all Defendants

(Doc. # 21), which is opposed (Doc. # 32). Plaintiffs also move to amend the Complaint. (Doc. # 32.)

Plaintiffs' Complaint lacks important factual matter and legal authority. Defendants' seventy-three page motion to dismiss brief is replete with boilerplate language and references to persons or issues not involved in the action, and is somewhat non-responsive to whatever merit there may be to Plaintiffs' cause(s) of action. The court concludes that Plaintiffs lack standing to seek some of the requested relief; that some Defendants are entitled to sovereign immunity; and that the remaining individual defendants sued for damages in their personal capacities are, at this point, entitled to qualified immunity. As to the remaining official capacity defendants who are sued for prospective relief, the court is unable to decipher the viability of the procedural due process cause of action on the current pleadings. Plaintiffs' Complaint is due to be dismissed with leave to re-file in accordance with this opinion.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02. Personal jurisdiction and venue are not contested, and there are adequate allegations in support of both.

## II.  STANDARDS OF REVIEW

Defendants generally invoke Federal Rule of Civil Procedure 12(b)(6) as the basis for this motion to dismiss.  However, two of Defendants' grounds for dismissal are sovereign immunity and standing, both of which are challenges to subject matter jurisdiction under Rule 12(b)(1).  *See Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) (noting that "a dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists" (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996))); *see also Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1227 n.14 (11th Cir. 2000) (noting that standing "raises an even more basic question of jurisdiction that cannot be waived and goes to the very heart of the 'case or controversy' requirement of Article III").

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction asserts either a facial or factual challenge to the complaint.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 20, 1981)[1]); *accord Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A factual attack challenges "the existence

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted). A facial attack, on the other hand, challenges the complaint on its face and "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). In considering a facial attack, as with a Rule 12(b)(6) motion, the court must take as true the allegations in the complaint. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Defendants have made a facial attack on the Complaint, asserting that Plaintiffs have not alleged an adequate basis for subject matter jurisdiction.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; thus, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). To state a claim that survives a Rule 12(b)(6) challenge, a complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief

above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545.

## III.  BACKGROUND

All five Plaintiffs allege that they are individuals who have been subjects of investigations of child abuse or neglect by the Alabama Department of Human Resources ("Alabama DHR") and the Shelby County Department of Human Resources ("Shelby County DHR"). (Compl. 10-13.)  Four of the five Plaintiffs (all except Ms. Raney) allege that they were informed by letter from either Alabama DHR or Shelby County DHR that they had been investigated upon a report of child abuse or neglect and that the DHR's investigation gave the DHR reasonable cause to believe that "the report is *indicated (true)* . . . [and that] [t]his case will be disposed as *indicated*." (Compl. 10-13.)  Allegedly, only Plaintiff Thomas was informed that she "ha[d] the right to an administrative record review." (Compl. 10-13.)  None of the letters indicated a right to a hearing.  At least three of the four Plaintiffs who received letters requested hearings, and those requests were denied.  As a result of the

investigations and the dispositions, Plaintiffs were listed on Alabama DHR's Central Registry.[2] [3]

Ms. Raney allegedly never received such a letter.  Rather, Ms. Raney's church – for a purpose presently unknown to the court[4] – requested information regarding Ms. Raney from the Central Registry, and "the request revealed that [Ms. Raney's] name and information were included on the Central Registry." (Compl. 13.)  Upon learning of this, *see supra* note 2, Ms. Raney alleges that she contacted Alabama DHR and Shelby County DHR and "complained that her name and information should not be included on the Central Registry." (Compl. 13.)  She alleges that both Alabama DHR and Shelby County DHR "failed and refused to take any action to address [her] complaint." (Compl. 13.)

---

[2]  Ala. Code § 26-14-8(b) states:

The [Alabama DHR] shall establish a central registry for reports of child abuse and neglect made pursuant to this chapter.  The central registry shall contain, but shall not be limited to:  (1) All information in the written report; (2) Record of the final disposition of the report, including services offered and services accepted; (3) The names and identifying data, dates, and circumstances of any persons requesting or receiving information from the registry . . . ; (4) The plan for rehabilitative treatment; and (5) Any other information which might be helpful in furthering the purposes of this chapter.

[3]  A report of child abuse or neglect must be posted in the Central Registry within three working days of its receipt.  Ala. Admin. Code § 660-5-34-.08(3).

[4]  As will be clarified below, the purpose of the church's Central Registry inquiry may very well affect the determination of whether Ms. Raney has a viable procedural due process claim.

Plaintiffs allege that they have a "liberty interest in not being designated . . . as having perpetrated [ ] acts of child abuse [or] neglect" and that they have suffered a "stigma and injury to reputation" on account of being listed on Alabama DHR's Central Registry.  (Compl. 15.)  Plaintiffs do not allege that the designations were factually incorrect or that they lacked sufficient evidence.  Plaintiffs also argue that "the denial of [a] [hearing] is a deprivation of [constitutional] rights provided by . . . the law of the State of Alabama."  (Compl. 15.)

Count I of the Complaint alleges violations of 42 U.S.C. § 1983 against all Defendants for violating Plaintiffs' rights to substantive due process[5] and to pre-deprivation hearings, and infringing upon Plaintiffs' fundamental liberty interests. (Compl. ¶¶ 1-4.)

Count II of the Complaint – titled "Federal Statutory Claim" – alleges that "DHR [(and Defendants Buckner and Mashego)] [are] obliged, pursuant to . . . Federal statutes and regulations referenced herein, to have policies, procedures and systems in place to assure that [P]laintiff[s] . . . [a]re afforded due process of law, including a pre-deprivation hearing . . . [and that] [i]nvestigations of child abuse/neglect reports are investigated by persons who have been properly trained for

---

[5]  The court will construe Count I as alleging a procedural due process claim.  *See infra*, note 7.

that purpose." (Compl. ¶¶ 5-8.) No specific federal statutes are cited in the cause of action nor does there appear anywhere else in the Complaint factual allegations that (either Alabama or Shelby County, or both) DHR has or have failed to adequately train its employees.

Count III of the Complaint – titled "Injunctive Relief" – alleges that Plaintiffs are "now suffering immediate and irreparable harm and will suffer the same in the future as a result of the wrongful acts of the [D]efendants which have resulted in the [P]laintiffs' names and information being placed on the Central Registry." (Compl. ¶ 10.) Plaintiffs seek an order restraining Defendants from maintaining Plaintiffs' names on the Central Registry without providing Plaintiffs a hearing to dispute the dispositions of the investigations. Plaintiffs also seek an order restraining Defendants from "denying to [P]laintiffs and similarly situated persons a hearing" and from "continuing the custom, policy o[r] practice of failing to fully inform [a] person subject [to] an *indicated disposition* of their rights . . . ." (Compl. ¶ 12.) Count III is construed as relating back to Count I.

Count IV of the Complaint – titled "Declaratory Relief" – seeks an order declaring Plaintiffs' and other "similarly situated persons'" constitutional rights to a hearing to challenge DHR's investigation's disposition. (Compl. ¶¶ 13-14.) Count IV is construed as relating back to Count I.

Along with the injunctive and declaratory relief asserted in Counts III and IV, Plaintiffs seek compensatory and punitive damages.

## IV.  DISCUSSION

### A.    Standing

The requirement of Article III standing is both a constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This case concerns constitutional and prudential standing.

Constitutional standing assures that Plaintiffs have a "'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

The test for evaluating constitutional standing includes three elements.  First, the plaintiff must have suffered an "injury in fact." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct

complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43). The burden is on the party invoking federal jurisdiction to demonstrate each element of standing. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).

To the extent that Plaintiffs seek generalized injunctive or declaratory relief based on hypothetical future violations (*see* Compl. ¶¶ 12, 14), Plaintiffs lack standing. In *Lyons*, the plaintiff sued the City of Los Angeles and four police officers for their alleged use of a chokehold in arresting the plaintiff. 461 U.S. at 97-98. The plaintiff sought compensatory damages and injunctive relief enjoining the use of chokeholds absent the threat of immediate use of deadly force. *Id.* at 98. Although recognizing the plaintiff's standing to seek compensatory damages, *id.* at 109 ("Indeed, he still has a claim for damages against the City that appears to meet all the Art. III requirements."), the Supreme Court held that the plaintiff lacked standing to pursue the injunction. Recognizing that the plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer future injury from

the use of chokeholds by police officers[,]" the Court, finding that the plaintiff lacked standing, stated that "it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.* at 108.

The same result is mandated in this case. Although most or all Plaintiffs appear to have live controversies as to whether they are entitled to hearings to challenge the Alabama or Shelby County DHR investigation dispositions at issue, it is pure speculation to say that any one of these Plaintiffs will become the subject of a future DHR investigation, and speculation on top of speculation that it will result in another unfavorable disposition that any one of them will seek to challenge through a hearing. "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101-02. Plaintiffs have not demonstrated the requisite immediate threat of future direct injury and, thus, lack standing to seek any generalized injunctive and declaratory relief against Defendants.[6]

---

[6] Plaintiffs, of course, may pursue prospective injunctive relief as it relates to the already-completed alleged procedural due process violations, subject to the limitations of this opinion.

11

Defendants also request the court to invoke the limitations of prudential standing regarding Plaintiffs' pursuit of relief on behalf of others similarly situated. "While a party may not ordinarily claim standing to vindicate the constitutional rights of some third party, this is a prudential, rather than jurisdictional, rule of practice." *Touchston v. McDermott*, 234 F.3d 1133, 1151 n.50 (11th Cir. 2000) (*en banc*) (Tjoflat, J., dissenting) (quoting *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997)); *see also Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (stating that one "policy-based limitation[ ] on the availability of judicial review . . . [is] that the plaintiff assert his or her own legal rights and interests rather than the legal rights and interests of third parties").

To the extent that Plaintiffs seek generalized injunctive relief or generalized declaratory relief on behalf of others similarly situated, Plaintiffs aim to assert the constitutional rights of others.  (Mot. to Dismiss 47 ("The possibility of future problems is not enough to confer standing . . . .  Plaintiff[s] cannot meet the standing requirement necessary to challenge some hypothetical legal interest in the future . . . . Plaintiff[s] cannot . . . make constitutional arguments, which do not affect [them], for others.").)  It is "well-established" that "'[f]ederal courts must hesitate before resolving a controversy . . . on the basis of rights of third persons not parties to the litigation.'"  *Touchston*, 234 F.3d at 1151 n.50 (Tjoflat, J., dissenting) (quoting

*Singleton v. Wulff*, 428 U.S. 106, 113 (1976)).  As demonstrated below, the question of whether any particular plaintiff suffers a constitutional injury will be determined by that individual's own circumstances, and is a highly individualized inquiry.  Thus, prudentially, the instant case is not the kind that can or should be resolved on behalf of "others similarly situated," or third parties.

**B.**   **Sovereign Immunity**

    *1.*   *Defendants Alabama DHR, Shelby County DHR*

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI; *see also Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) ("Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." (citing *Hans v. Louisiana*, 134 U.S. 1 (1890))).

Furthermore, "[i]t is . . . well-settled that Eleventh Amendment immunity bars suits brought in federal court when . . . an 'arm of the State' is sued."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).   The determination of "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the action out of which liability is asserted to arise."  *Id.* (citing *Shands Teaching Hosp. & Clinics v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000)).   Prior state and federal court decisions establish that both Alabama DHR and Shelby County DHR are entitled to sovereign immunity with respect to all forms of relief asserted against them, and are due to be dismissed for lack of subject matter jurisdiction.  *See Ex parte Ala. Dep't. of Human Res.*, 999 So. 2d 891, 896 (Ala. 2008) (holding that Alabama DHR is entitled to sovereign immunity under Alabama Constitution); *Kid's Care, Inc. v. State of Ala. Dep't of Human Res.*, No. 01-T-453-N, 2001 WL 35827965, at *1 (M.D. Ala. June 14, 2001) (finding that the Eleventh Amendment "bars all claims against [Alabama DHR] in federal court"); *see also Franklin Cnty. Dep't of Human Res.*, 674 So. 2d 1277, 1279 (Ala. 1996) (holding that county department of human resources is entitled to sovereign immunity under Alabama Constitution).  Tracking the reasoning of these decisions, all claims against Alabama DHR and Shelby County DHR are due to be dismissed for lack of subject matter jurisdiction.

**2.**    ***Defendants Buckner, Mashego, Foster, Swoopes, and Beck in Their Official Capacities***

Plaintiffs have sued Defendants Nancy Buckner, Commissioner of Alabama DHR; Kim Mashego, Director of Shelby County DHR; and Defendants Foster, Swoopes, and Beck, employees of Alabama DHR, for damages in their official capacities.  (Compl.)  "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  Thus, the individual Defendants – including Ms. Mashego because county DHRs are "arms of the State" – are entitled to absolute immunity with regard to any claims for damages against them in their official capacities.  Similarly, the individual Defendants in their official capacities are not "persons" for purposes of § 1983 monetary relief.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

However, Plaintiffs may pursue prospective (*i.e.*, injunctive and declaratory) relief under § 1983 (within the confines discussed elsewhere in this opinion) – to the extent that there is a viable § 1983 claim – against the individual Defendants in their official capacities.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that

Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law); *Will*, 491 U.S. at 71 n.10 (noting that a state official sued for prospective relief in her official capacity is a "person" under § 1983 because "'official-capacity actions for prospective relief are not treated as actions against the State'" (quoting *Graham*, 473 U.S. at 167 n.14)).

## C.   The § 1983 Procedural Due Process Claim[7]

The remaining § 1983 claim is against Defendants Foster, Swoopes, and Beck in their personal capacities for money damages and for prospective relief against all individual Defendants in their official capacities.

### 1.   *Defendants Foster, Swoopes, and Beck and Proximate Causation*

Based upon the allegations in the Complaint, Defendants Foster, Swoopes, and Beck did not proximately cause Plaintiffs' alleged constitutional deprivations. "A § 1983 claim requires proof of an affirmative causal connection between the

---

[7] Count I of the Complaint references "substantive due process." (Compl. ¶ 3.) Based upon the nature of the alleged constitutional violation, it appears that Plaintiffs intended to allege a procedural due process claim, and the court will construe the claim as such. However, if Plaintiffs indeed intended to state a substantive due process claim – that the executive actions of denying Plaintiffs a hearing and of maintaining their names on the Central Registry violates Plaintiffs' liberty interests – such a claim would require Plaintiffs to allege that the executive action is an "abuse of executive power . . . clearly unjustified by any legitimate objective" or that the executive action is "shocking to the judicial conscience." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998); *see also* Martin A. Schwartz & Kathryn R. Urbonya, Section 1983 Litigation 37 (2d ed. 2008) (citing *Collins v. City of Harker Heights, Tx.*, 503 U.S. 115, 128 (1992)). No such allegation is made nor would any such allegation, on these supposed facts, survive a motion to dismiss.

defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). "The causal relation does not exist when the continuum between Defendant[s'] action[s] and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002).

Defendants and Plaintiffs offer a materially similar hierarchy of decision-making at DHR. (Compl. 3-6; Defs.' Br. 4-5.) Defendants Foster and Swoopes "participated in the child abuse/neglect investigation and signed the letters informing Plaintiffs that they were 'indicated' for child abuse/neglect and that Plaintiffs had a right to an Administrative Record Review." (Defs.' Br. 4-5; *see also* Compl. 5-6.) "Defendants Buckner and Mashego . . . are responsible for the supervision [of] the operation of [DHR] and [are] responsible for implementing rules and procedures." (Defs.' Br. 4; Compl. 4-5.) Nor is there any disagreement regarding Defendant Beck, whom Defendants describe as a "DHR administrat[ive] record reviewer making quasi-judicial decisions regarding 'indicated' dispositions in child abuse/neglect investigations by Shelby County DHR." (Defs.' Br. 70.) Similarly, Plaintiffs' Complaint describes Ms. Beck as "Administrative CA/N Record Reviewer." (Compl. 11.)

17

Thus, it is undisputed that Defendants Foster and Swoopes participated in the investigations of Plaintiffs and prepared the reports in which they determined in their professional judgment that there was credible evidence that child abuse and neglect were indicated.  Likewise, it is undisputed that Defendant Beck conducted an administrative record review of those reports.  There is no allegation, however, that Defendants Foster, Swoopes, or Beck played any role in the decision to deny Plaintiffs a hearing.  Of course, there is no constitutional right not to be investigated by DHR.  *Foy*, 94 F.3d at 1536-37 (stating that "'[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations'" (quoting *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993))).  Therefore, Plaintiffs' alleged constitutional injury occurred after Defendants Foster's and Swoopes's participation in the investigation and the "continuum between Defendant[s'] action[s] [of preparing the reports] and the ultimate harm [of being denied a hearing] is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon*, 303 F.3d at 1275.  Furthermore, Defendant Beck conducted the record review, and there is no allegation that her involvement went beyond that function.  Thus, Defendants Foster and Swoopes and Defendant Beck are due to be dismissed because Plaintiffs have failed to allege sufficient facts regarding causation. *See Twombly*, 550 U.S. at 545 (holding that a complaint must include enough facts "to raise a right to

18

relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)").[8]

### 2.   *Defendants Foster, Swoopes, and Beck and Qualified Immunity*

Furthermore, even if Defendants Foster, Swoopes, or Beck had some involvement in the decision to deny Plaintiffs a hearing, Plaintiffs, at this point, have failed to rebut their qualified immunity defense.  To overcome Defendants' qualified immunity defense, Plaintiffs bear the burden of showing both that Defendants' conduct amounted to a constitutional violation and that the right was already "clearly established" at the time of Defendants' conduct.  *Youman v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010).  Pursuant to the Supreme Court's decision in *Pearson v. Callahan*, a court is "permitted to exercise [its] sound discretion" in deciding which prong of the qualified immunity defense to address first.  555 U.S. 223, 236 (2009).

---

[8] Although Plaintiffs have failed to allege that Defendant Beck caused their alleged constitutional injury, Defendant Beck may also be entitled to absolute quasi-judicial immunity in her role as administrative record reviewer.  Executive branch employees who serve "quasi-judicial" functions may be entitled to absolute immunity based on the nature of their duties.  *Butz v. Economou*, 438 U.S. 478, 511-12 (1978); *see also Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009) ("Under this functional approach, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process.") (citation omitted).  The Alabama Administrative Code states that "[a]dministrative record reviews are conducted by Departmental staff who are not involved with the case . . . .  The reviewers have the authority to overturn the dispositional finding of the worker and supervisor, and their decision is final."  Ala. Admin. Code § 660-5-34-.07.  As a DHR staff member not associated with the case who has final authority to review and overturn a DHR investigation disposition, the administrative record reviewer appears to meet the criteria under the functional approach of absolute quasi-judicial immunity.

As discussed below, the court is unable to determine, based on the pleadings before it, whether any Plaintiff has a viable claim of a constitutional injury. However, the court can readily determine that Defendants Foster, Swoopes and Beck would be entitled to qualified immunity on damages claims because Plaintiffs, to this point, have not demonstrated that the right to a hearing to challenge child abuse and neglect investigation dispositions is clearly established as a matter of law.

"It is the plaintiff's burden to show that when the defendant[s] acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Spivey v. Elliott*, 29 F.3d 1522, 1527 (11th Cir. 1994) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To meet this burden, Plaintiffs argue that "Defendants were on notice and aware of [P]laintiffs' right to a hearing by virtue of the statute [Ala. Code § 26-14-7.1][9] and administrative rules and regulations [Ala. Admin. Code §§ 660-1-5-.01-.22] referenced herein."

---

[9]  The referenced statute, on its face, does not apply to individuals such as Plaintiffs:

> Any person who comes under investigation by [DHR] for the abuse or neglect of a child or children *and* who is employed by, serves as a volunteer for, holds a license or certificate for, or is connected with any facility, agency, or home which cares for and controls any children and which is licensed, approved, or certified by the state, operated as a state facility, or any public, private, or religious facility or agency that may be exempt from licensing procedures shall be granted the following due process rights by [DHR]: . . . (3) If the department's investigators conclude that child abuse/neglect is indicated, an investigative hearing *may* be held to confirm or reject the investigators conclusions.

Ala. Code § 26-14-7.1 (emphasis added).

20

(Pls.' Resp. 6; Compl. 9.)    Plaintiffs also make reference to the Alabama Administrative Procedure Act ("AAPA"), which states:  "In a contested case, all parties shall be afforded an opportunity for hearing . . . ."  Ala. Code § 41-22-12; *see also* Ala. Code § 41-22-3 (defining contested case as "[a] proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing").   The thrust of Plaintiffs' argument is that these statutes and regulations clearly establish that a hearing is required. Plaintiffs cite the Eleventh Circuit's unpublished opinion in *Young v. Nichols*, which states that "[q]ualified immunity protects government officials from liability in § 1983 actions as long 'as their conduct does not violate clearly established *statutory* or constitutional rights of which a reasonable person would have known.'"  398 F. App'x 511, 516 (11th Cir. 2010) (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Assuming that the cited Alabama statute and regulations do, under state law, require a hearing for any one of these Plaintiffs, that Plaintiff still must show that Defendants' conduct violated clearly established *federal* law.[10]  In *Foy v. Holston*, the

---

[10]  "State law may bear upon a claim under the Due Process Clause when the *property* interests protected by the Fourteenth Amendment are created by state law."  *Davis v. Scherer*, 468 U.S. 183, 193 (1984) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (emphasis added).  The Court also noted that "[a]ppellee does not contend here that the procedural rules in state law govern the constitutional analysis of what process was due him under the Fourteenth Amendment."  *Id.*

Eleventh Circuit, in a footnote, "point[ed] out that [d]efendants cannot be said to have violated clearly established federal law simply by failing (if there was a failure) to follow provisions of the Alabama code or state regulations which govern child custody matters." 94 F.3d 1528, 1532 n.4 (11th Cir. 1996) (citing and quoting *Davis*, 468 U.S. at 193-95). In *Davis*, the Supreme Court considered the argument that "official conduct that contravenes a statute or regulation is not 'objectively reasonable' because officials fairly may be expected to conform their conduct to such legal norms." 468 U.S. at 193. Although recognizing that the "reasoning is not without some force[,] [the Court] decline[d], however, to adopt it." *Id.* at 194. The court reiterated that "'an official would not be held liable in damages under § 1983 unless *the constitutional right he was alleged to have violated* was clearly established at the time of the violation.'" *Id.* (quoting *Butz*, 438 U.S. at 498). In a § 1983 action alleging a constitutional violation by a state actor, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.*

The Supreme Court then paused to address *Harlow*'s acknowledgment, reproduced by Plaintiffs above, "that officials may lose their immunity by violating 'clearly established statutory . . . rights.'" *Id.* at 194 n.12 (quoting *Harlow*, 457 U.S. at 818). The Court explained that the "statutory rights" referred to in *Harlow*

22

contemplated lawsuits under § 1983 for violation of federal statutes. *Id.* (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980) (holding that § 1983 creates cause of action against state officials for violating federal statutes)). The court then squarely addressed Plaintiffs' transitive violation argument: "For the reasons that we discuss, officials sued for violations of rights conferred by statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some *other* statute or regulation." *Id.* This reasoning solidly forecloses Plaintiffs' clearly established argument, which, in its entirety, is that the alleged federal constitutional due process right to a hearing is clearly established because a section of the Alabama Code and various DHR regulations potentially require such a hearing under state law. This argument is insufficient as a matter of law to carry Plaintiffs' burden of demonstrating that the right to a hearing was clearly established.

Thus, even if Defendants Foster, Swoopes, and Beck, the protective services caseworker, supervisor, and administrative record reviewer, respectively, did proximately cause the alleged constitutional injury, they nevertheless would be entitled to qualified immunity.

### 3.    *Ms. Raney's Claim*

Notwithstanding the above, the factual allegations concerning Ms. Raney are intriguing, but are so underdeveloped that the court cannot at this point make any

pronouncements on her case.  How or why was the church able to access Ms. Raney's information on the Central Registry?  Was Ms. Raney working or volunteering at her church at the time her church discovered her information on the Central Registry?  Was she applying for a paid or volunteer position?  Was she terminated or not hired or disallowed from working or volunteering as a result?  For what purpose was her name in the Central Registry?  Why did she not receive notice that she was placed on the Central Registry?  What DHR employees were responsible for placing her on the Central Registry?

All of these questions aside, the inquiry of whether it is clearly established that the "plus" requirement of the stigma-plus inquiry, *infra*, can be satisfied by a change in employment or volunteer status is difficult to address with minimal facts and without any briefing on the law.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (holding that a person's interest in reputation alone, "apart from some more tangible interests *such as employment*," is not a protected liberty interest within the meaning of the Due Process Clause) (emphasis added); *Smith ex. rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003) (finding no constitutional injury and emphasizing that the plaintiff "has not contended that he was discharged, demoted, or rejected from a job due to the information on the [Central] Registry"); *Behrens v. Regier*, 422 F.3d at 1255, 1263 n.14 (11th Cir. 2005) (noting "that most stigma-plus cases involve

claims by government employees who have been discharged or whose employment status has been otherwise negatively affected" and collecting cases); *see also Hope v. Pelzer*, 536 U.S. 730, 747 (2002) ("applying the objective immunity test of what a reasonable [DHR employee responsible for the decision to grant or deny a hearing] would understand").   Accordingly, Plaintiff Raney, and any other Plaintiff to the extent that they can, will be allowed to amend the Complaint to assert claims against individual defendants for damages, subject to the limitations pronounced in this opinion.

### 4.   The Official Capacity Defendants and Prospective Relief

An entirely different analysis applies to claims for prospective relief against Defendants sued in their official capacities.   "Procedural due process rules are not meant to protect persons from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "In [the Eleventh] [C]ircuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements:  (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006)).

Plaintiffs contend that they have a liberty interest in not being designated as having perpetrated child abuse or neglect without credible evidence and appropriate professional judgment.[11]  *See* Ala. Code § 26-14-8(a)(1) (stating that child abuse or neglect is "indicated . . . [w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect"). "The initial question with any due process challenge is 'whether the injury claimed by the plaintiff is within the scope of the Due Process Clause.'" *Behrens*, 422 F.3d at 1259 (quoting *Smith*, 322 F.3d at 1296). "'The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Id.* (quoting *Roth*, 408 U.S. at 569).

Of course, there must be a sufficient deprivation of liberty to establish an injury of constitutional import.  Plaintiffs primarily contend "that the stigma and injury to reputation, in connection with the denial of the hearing which was previously recognized and clearly established, . . . resulted in the deprivation of a protected

_____

[11] In the Complaint, Plaintiffs state without qualification that they have a liberty interest in not being designated as having perpetrated child abuse or neglect.  As stated above, "[p]rocedural due process rules are not meant to protect persons from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey*, 435 U.S. at 259. Nowhere in the Complaint does any Plaintiff contend that DHR's indicated dispositions lacked credible evidence or were the result of an abuse of professional judgment.  Plaintiffs must allege that the deprivation was unjustified to claim a constitutional injury.  In order to proceed further with this opinion, the court assumes a claim of unjustified deprivation.

liberty interest without due process of law."  (Compl. 15.)  "The Supreme Court, however, has held that injury to reputation, by itself, does not constitute the deprivation of a liberty . . . interest protected under the Fourteenth Amendment." *Behrens*, 422 F.3d at 1259 (citing *Paul*, 424 U.S. at 701-02, 712).   In *Paul*, the Supreme Court "established what has come to be known as the 'stigma-plus' test." *Behrens*, 422 F.3d at 1259 (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001)).  The Eleventh Circuit summarized the requirements of the "stigma-plus" test:  "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial [or alteration] of a [substantive] right or status previously recognized under state law."  *Id.* at 1260 (quoting *Smith*, 322 F.3d at 1296); *see also Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1188 (9th Cir. 2009) (stating that *"Paul* provides that stigma-plus applies when a right or status is 'altered *or* extinguished'") (quoting *Paul*, 424 U.S. at 711 (employing the verb "to alter" or the noun "alteration" five times in one page)).

In *Behrens*, the plaintiff claimed he was erroneously "verified" as a child abuser by the Florida Department of Children and Families ("DCF") after he took his son to the emergency room for head injuries allegedly sustained when the plaintiff, who was carrying his son, tripped over a child safety gate in the plaintiff's home.  422

F.3d at 1257.  The plaintiff and his wife later attempted to adopt a child, but were unable to meet Florida's adoption law requirements, which included receiving a favorable home study, because, they alleged, DCF had "damaged [the plaintiff's] reputation by classifying him as a 'verified' child abuser."  *Id.*  First concluding that the DCF's "verified" child abuser designation "no doubt" stigmatized the plaintiff, *id.* at 1260 (collecting cases), the Eleventh Circuit turned to the "plus" requirement. The plaintiff claimed that the stigmatizing designation as a "verified" child abuser "interfered with his alleged right to adopt another child."  *Id.* at 1261.  However, the "alleged right or status [must] have been previously recognized and protected under state law."  *Id.* (citing *Paul*, 424 U.S. at 710-11).  Because the plaintiff "failed to point to any provision of Florida law [granting] prospective adoptive parents . . . the [substantive] right to adopt an unrelated child" and because the plaintiff "[could not] establish that, under Florida law, he ha[d] any legal claim of entitlement to have his adoption application approved[,]" the Eleventh Circuit found that the "plus" requirement was lacking.

In *Humphries*, the Ninth Circuit considered a case that involved "every parent's nightmare."  554 F.3d at 1175.  The father's daughter from a previous marriage took the Humphries' car, drove to her biological mother's home in Utah, where she had lived previously, and claimed abuse against the Humphries.  *Id.* at 1180.  After an

28

emergency room physician diagnosed "non-accidental trauma, with extremity contusions[,]"[12] the Humphries were arrested and their other two children placed in protective custody. *Id.* A day after the arrest, an investigation report found that child abuse by the Humphries was "substantiated," and that report was entered into California's Child Abuse Central Index ("CACI"). *Id.* After the Humphries' criminal case was dismissed when the prosecutor learned the true cause of the daughter's scars, the Humphries successfully petitioned the criminal court for an order finding them "factually innocent" of the felony torture charge. *Id.* at 1181-82. The juvenile court case regarding the Humphries' other two children also ended favorably for the Humphries, when the court "dismissed all counts as 'not true.'" *Id.* at 1182. Despite the findings of "factual innocence" and "not true" in the criminal and juvenile court cases, the "substantiated report" of child abuse, which required "credible evidence," remained in CACI. The Humphries sued, arguing that the defendants violated their "Fourteenth Amendment right to procedural due process by listing and continuing to list them on CACI, without any available process to challenge that listing." *Id.* at 1184.

---

[12] The contusions the physician viewed were actually scars from a surgically removed melanoma. *Humphries*, 554 F.3d at 1181.

The Ninth Circuit determined that there was a deprivation of a protected liberty interest under the "stigma-plus" test. *Id.* at 1185-92. The court easily concluded that the CACI listing was a stigma, stating that "to be accused of child abuse may be our generation's contribution to defamation per se, a kind of moral leprosy." *Id.* at 1186. The court then turned to the "plus" requirement, and concluded that the "Humphries allege more than mere reputational harm[.]" *Id.* at 1187. One of the ways in which the Humphries satisfied the "plus" requirement was their "expressed [ ] desire to work or volunteer at the Florence Crittenton Center in Los Angeles, a community center offering child care and a variety of other services." *Id.* at 1183. The court concluded that the CACI listing "directly affected . . . their eligibility to work or volunteer at a local community center." *Id.* at 1188.

As mentioned above and below, with some development of the factual allegations on re-pleading, Ms. Raney's or potentially another plaintiff's situation may be similar to that of the Humphries. Although Plaintiff Raney does not allege the reason that her church was able to access Central Registry records pertaining to her, it is easily deduced that it could not have been for any purpose other than those permitted in § 26-14-8, which includes disclosures "to the alleged perpetrator's

employer, prospective employer, or others."  § 26-14-8(d).[13]  If, indeed, this is the case, then Plaintiff Raney, or another plaintiff, may be able to allege a sufficient deprivation of liberty to state a plausible claim for prospective relief.[14]

For the other Plaintiffs, the instant case is geographically and factually closer to home to the *Smith* case.  In *Smith*, the plaintiff – suing Alabama DHR under § 1983 for alleged procedural due process violations relating to child abuse investigations – was a minor who claimed he was stigmatized when his name and a report alleging child sexual abuse was entered into Alabama DHR's Central Registry.  322 F.3d at 1291-94.  "In rejecting [Smith's] cause of action, [the Eleventh Circuit] noted that 'Smith's employment *and custody rights* in the future could be affected adversely due to the information on the [Central] Registry, but [such] conjecture overlooks *Paul*'s insistence that reputational damage alone is insufficient to constitute a protected liberty interest.'"  *Behrens*, 422 F.3d at 1264 (quoting *Smith*, 322 F.3d at 1297).  Like

---

[13]  Section 26-14-8(d) states in full:

The names of persons or information in the investigative report placed on the state's central registry which may be made available to the alleged perpetrator's employer, prospective employer, or others are those cases that [DHR] or the investigative hearing officer has determined child abuse or neglect to be indicated.

[14]  The Ninth Circuit did emphasize that California law mandated that certain licensing agencies search CACI, *Humphries*, 554 F.3d at 1187-88, 1191, while Alabama law only states that Central Registry information "*may* be made available" to employers.  *Id.* at 1191 (citing Ala. Code § 26-14-8(d)).  In Ms. Raney's circumstances, the alleged facts to this point reveal that her church *did* in fact consult the Central Registry, and that fact potentially obviates this point of difference.

the plaintiff in *Smith*, "[t]he [C]omplaint does not at any point allege that [Plaintiffs] [were] denied any right or status [previously recognized and protected under Alabama law] other than [ ] not being branded a child [ ] abuser." 322 F.3d at 1297. Nor does the Complaint allege that any right was "distinctly altered" by being listed on the Central Registry. *Paul*, 424 U.S. at 711; *Humphries*, 554 F.3d at 1188.

The failure to allege facts sufficient to meet the "plus" requirement of the "stigma-plus" test is fatal to Plaintiffs' § 1983 claim for prospective relief, and it is due to be dismissed without prejudice for failure to state a claim upon which relief can be granted.[15] Fed. R. Civ. P. 12(b)(6).

### 5.    *Plaintiffs' Entitlement Theory*

Plaintiffs also appear to advance an entitlement theory, arguing that state law potentially requiring a hearing has created a liberty interest in that hearing entitled to due process protection. *See Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003) ("Although some due process protections stem independently from the Fourteenth Amendment, state law may also create liberty or property interests entitled to due

---

[15]  In this line of cases, there is one transient thread in many of them:  the plaintiff had received, either directly or indirectly, a measure of due process. *Smith*, 322 F.3d at 1291-93 (juvenile court proceedings); *Foy*, 94 F.3d at 1531 (same); *Davis*, 468 U.S. at 192 ("Nor was it unreasonable in this case, under Fourteenth Amendment due process principles, for the Department to conclude that appellee had been provided with the fundamentals of due process.").

process protection." (citing *Paul*, 424 U.S. at 711 & n.5)[16]); *see also Sultenfuss v. Snow*, 35 F.3d 1494, 1499-1503 (11th Cir. 1994).  In other words, Plaintiffs argue that their protected liberty interest is an alleged right to a hearing created by state law and that the constitutionally inadequate process is the denial of that same hearing.  In *Water Works & Sewer Board of the City of Birmingham v. United States Department of Army, Corps of Engineers*, the Northern District of Alabama confronted a similar argument and concluded that "there is no protected interest in a procedural right." 983 F. Supp. 1052, 1062-63 (N.D. Ala. 1997) (citing and quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983)).  In *Olim*, the Supreme Court stated:

> As the [Seventh Circuit] . . . stated . . . , '[a] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.'  *Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement* . . . .  The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right . . . .

461 U.S. at 250-51 (quoting *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982)); *see also Merritt v. Broglin*, 891 F.2d 169, 172 (7th Cir. 1989) ("State created procedural rights are insufficient to create a substantive liberty interest.").

---

[16]  In *Paul*, the Supreme Court offered one example of a state-created liberty interest:  "In *Bell v. Burson*, 402 U.S. 535 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a substantive right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process."  *Paul*, 424 U.S. at 711.

Accordingly, to the extent that Plaintiffs argue that the Alabama statutes and regulations allegedly requiring a hearing have created an entitlement to a hearing protected by the Fourteenth Amendment, that argument is rejected.[17]

---

[17] The court does, however, see some merit to Plaintiffs' argument that state law and regulations require a hearing, at least for a certain class of alleged perpetrators. The proper starting point for this inquiry is § 26-14-7.1 of the Alabama Code, which is titled "Due Process Rights for Persons Under Investigation by [DHR]." As reproduced above, *supra* note 9, the statute grants "due process rights," but limits the class of persons entitled to such rights to those who work or volunteer or who are licensed for or connected to "any facility, agency, or home which cares for and controls any children[.]" § 26-14-7.1. The statute then enumerates "the following due process rights" to which that class of persons is entitled. Subsection (3) states that "[i]f [DHR's] investigators concluded that child abuse/neglect is indicated, an investigative hearing *may* be held to confirm or reject the investigator's conclusions." § 26-14-7.1 (emphasis added). Although the Alabama legislature was in an optative mood when it employed the "may be held" language, the rest of the statute, DHR's regulations, and the AAPA appear to contemplate that a hearing *must* be held if someone who falls within the protected class so requests. Subsection (4) of § 26-14-7.1 states that "[t]he alleged perpetrator shall be given ten departmental working days from the receipt of the notification of the investigator's conclusions to request a hearing, and such request must be in writing. If no such request is received in the department's office within ten departmental working days, the alleged perpetrator's *opportunity* for a hearing shall be considered waived . . . ." *Id.* (emphasis added).

DHR regulations and the AAPA reveal that the alleged perpetrator's "opportunity for a hearing" means that a hearing is required if certain relevant criteria are met: (1) the alleged perpetrator fits within § 26-14-7.1's defined class; and (2) the hearing is properly requested. Pursuant to DHR regulation § 660-1-5-.02 (titled "Hearings"), "[DHR] is *required* to provide notice and *opportunity* for a hearing to any aggrieved person entitled by law to be given an opportunity for a hearing . . . ." Ala. Admin. Code § 660-1-5-.02 (emphasis added). Although the statute (§26-14-7.1) merely states that an alleged perpetrator has an opportunity for a hearing, DHR's regulation (§ 660-1-5-.02) states that DHR is *required* to provide that opportunity. The AAPA further reinforces the conclusion that an opportunity for a hearing is required for alleged perpetrators who fit within § 26-14-7.1's defined class: "In a contested case, all parties *shall be afforded an opportunity for hearing*." Ala. Code § 41-22-12(a). And, as mentioned above, a "contested case" is "[a] proceeding . . . in which the legal rights . . . of a party are *required by law* to be determined by an agency after an opportunity for hearing." Ala. Code § 41-22-3(3). Thus, §§ 26-14-7.1 and 41-22-12(a) can be read in conjunction to state that alleged perpetrators who fit within § 26-14-7.1's defined class and who are entitled to § 26-14-7.1's due process rights "shall be afforded an opportunity for hearing." § 41-22-12(a).

34

D.   __Count II – "Federal Statutory Claim"__

Count II alleges violations of "those Federal statutes and regulations referenced herein." (Compl. ¶ 6.)  No specific federal statute or regulation is referenced in Count II, and the factual allegations (ensuring due process and failing to adequately train) appear disjunctive.  The pleading of this Count is akin to a shotgun pleading, but loaded with a blank shell, and it violates Federal Rules of Civil Procedure 8(a).  Rule 8(a) provides that "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Count II, in its current state, does not "contain a short and plain statement of the claim."  *Id.*  Plaintiffs must specifically identify their causes of action, along with sufficient facts showing that Plaintiffs are entitled to relief. *Twombly*, 550 U.S. at 570 (stating that a complaint must contain "enough facts to state a claim to relief that is plausible on its face").  Furthermore, Count II appears to attempt to plead multiple causes of action, and thus also violates Rule 10(b), which states that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  In other

---

All of this said, a potential remedy for a state actor's violation of a state procedural right is a state court petition for a writ of mandamus.  *See Ex parte Queen*, 959 So. 2d 620, 621 (Ala. 2006) (listing elements of a mandamus petition); *see also* 52 Am. Jur. 2d. *Mandamus* § 114 ("Mandamus will issue in a proper case to compel the performance of ministerial duties by other state officers, including administrative agencies . . . .").

words, each cause of action and the attendant facts supporting that cause of action must be separated by Count and by paragraph.  Accordingly, Count II is due to be dismissed with leave to re-file.

## E.    The Equal Protection "Claim"

In the factual allegations, Plaintiffs allege that "DHR has failed to establish and implement policies and procedures . . . and has failed to ensure that such rights are not denied and violated; and, those failures have resulted in [violations] of Equal Protection of the law."  (Compl. 14.)   Equal protection appears again in the contentions section.  (Compl. 16.)  Nowhere in the causes of action does equal protection resurface.  There are no allegations regarding the race or gender of any Plaintiff.  There are no allegations regarding the protected classifications Plaintiffs attempt to invoke.  There are no factual allegations that Defendants' denial of a hearing was in any way motivated by race or gender.  Plaintiffs' equal protection claim, if it exists at all, is "wholly insubstantial and frivolous" and is due to be dismissed for lack of subject matter jurisdiction. *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998).

## V.  CONCLUSION

The court issues part IV.C.4 of this opinion reluctantly.  As the Ninth Circuit in *Humphries* pointed out, the seed of having one's name in the Central Registry can

germinate into disastrous results.  The fact that these potential "nightmares" are only potential is surely of little comfort to one who has been refused an opportunity to challenge DHR's indicated disposition through a hearing.  *Humphries*, 554 F.3d at 1170 (commencing opinion by stating that "[a]ppellants . . . are living every parent's nightmare").

Being labeled as a child abuser or child sexual abuser is the stigma of all personal stigmas.  *Id*. at 1186 ("Indeed, to be accused of child abuse may be our generation's contribution to defamation per se, a kind of moral leprosy.").  The mere allegation of child abuse is enough to make one a pariah of society.  As the Supreme Court stated in *Wisconsin v. Constantineu*, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential."  400 U.S. 433, 434 (1971).  Because of the super-stigma that comes with an allegation of child abuse, it is more than conceivable that where the Central Registry listing may have an adverse effect, it will have that effect.  For example, it does not take a creative imagination to envision a custody dispute between a divorcing couple ending in an unfavorable disposition for one who is listed on the Central Registry.[18]  The listing also effectively

---

[18]  And it only takes a little more imagination, plus some planning ahead, for one parent to fabricate child abuse allegations in order to potentially tip the custody balance strongly in his or her favor.

forecloses a broad range of employment opportunities that involve interaction with children. Although it is theoretically possible for an employer to investigate the Central Registry, discover the applicant's name along with DHR's disposition, and still offer him or her a job, such a scenario occurring in the real world is exceedingly unlikely given the stigma and given the employer's potential exposure to tort liability. While a court may be logically correct in viewing an outcome that is 99.9% likely as "theoretical" or "possible," such a conclusion defies common sense. The reality is that the listing, viewed by a potential employer or undefined "others," will carry practically certain consequences.[19]

Finally, it is of no solace to those whose names populate the Central Registry that, when one of these nightmares does come to fruition, they will likely be unable

---

[19] Of course, the simple allegation that a plaintiff may apply for any job in the near or distant future and the Central Registry listing could have adverse consequences on the plaintiff's prospects would be insufficient under existing law to implicate a liberty interest based on the alteration of the plaintiff's potential future employment. Rather, at least in the Ninth Circuit, the plaintiff must allege that he or she is employed or is seeking employment in a field where an employer is likely to conduct a search of the Central Registry regarding its employees or prospective employees, and that the Central Registry listing is likely to foreclose or terminate that particular employment. *See Humphries*, 554 F.3d at 1183, 1197-88 (finding that plaintiffs' expressed desire to work or volunteer at a local community center, combined with affidavit of the center's human resources manager that all adults must undergo a CACI (California's equivalent of the Central Registry) check prior to being able to volunteer or work at the center, "directly affected" or "altered" the plaintiffs' rights); *see also Dupuy v. Samuels*, 397 F.3d 493, 503-04, 509-11 (7th Cir. 2005) (finding that where "child care workers effectively are barred from future employment in the child care field once an indicated finding of child abuse or neglect against them is disclosed to, and used by, licensing agencies[,]" a protected liberty interest is "squarely implicate[d]" under *Paul*). In this case, Plaintiffs have simply failed to allege any such consequences at all.

to mount a challenge to the central registry listing then or ever.[20]  Take the example of an alleged perpetrator, twenty years after having been wrongfully listed on the Central Registry and having been denied a hearing because at the time he or she had no protected liberty interest or because the hearing request was not received within 10 days, who then decides to make a career change to become an elementary school teacher or who decides simply to volunteer at his or her church or the local YMCA. *See* Ala. Admin. Code § 660-5-34-.07(d)(9) ("Upon approved request, [disclosure is available] to an employer or potential employer . . . . An employer is one who engages persons for either paid or voluntary positions.").  From aught that appears in Alabama

---

[20]  The court is troubled by the interaction of several aspects of the Alabama statutory and regulatory scheme.  First, a report must be entered into the Central Registry "within 3 working days of its receipt."  Ala. Admin. Code § 660-5-34-.08.  This provision alone precludes a reasonable investigation in all but the most egregious cases.  Second, the opportunity for a hearing or administrative record review must be requested within 10 days of receipt the notice of the indicated report, and that opportunity is deemed waived if not received in within 10 days.  Ala. Admin. Code § 660-5-34-.07.  Third, the statutes and regulations appear to allow a hearing only to a certain class of people,  Ala. Code § 26-14-7.1, and are ambiguous at best.  Fourth, the allowance of "professional judgment" exercised on "credible evidence" is essentially standardless, and the lack of a right to a hearing would never survive scrutiny in a prison, mental health, public housing, welfare, or even minor crime (*e.g.*, parking ticket) setting.  *See* Ala. Code § 26-14-8(a)(1) (a report is indicated "[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect").  To the contrary, this "standard" invites arbitrary and capricious mischief.  Finally, there appear to be lax rules regarding the disclosure of Central Registry reports.  Ala. Code § 26-14-8(d) (indicated reports may be made available "to the alleged perpetrator's employer, prospective employer, or *others*") (emphasis added).  The speed with which reports must be entered on the central registry, combined with a deluded standard, a meaningless review process with restrictions thereon, and broad disclosure rules, can create a perfect storm where incorrect reports are entered, cannot be challenged, and are then disclosed, harming an innocent person's reputation and more.

law and procedure, such a career change or even the simple desire to volunteer would be all but foreclosed based upon the Central Registry listing.  Having one's name on the Central Registry is no mere blemish, but rather a scarlet tattoo (of the permanent variety).

The prevention of child abuse or neglect is of utmost concern, but not at the constitutional expense of *accurately* identifying those who perpetrate that abuse.  The stigma-plus test should be more accommodating to the "plus" requirement when the "stigma" involved has the potential of being so damaging both in scope and time.

Accordingly, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 21) is GRANTED, and that:

(1)   All claims against Defendants Alabama DHR and Shelby County DHR are DISMISSED for lack of subject matter jurisdiction;

(2)   All claims against Defendants Foster, Swoopes, and Beck are DISMISSED for failure to state a claim for which relief can be granted;

(3)   Counts I, II, III, and IV are DISMISSED without prejudice for failure to state a claim upon which relief can be granted;

(4)   Plaintiffs' equal protection "claim" is DISMISSED for lack of subject matter jurisdiction; and

(5)   Plaintiffs' motion to amend (Doc. # 32) is DENIED in part and GRANTED in part, subject to the limitations of this opinion, summarized as follows.

First, Plaintiffs may seek prospective relief against the official capacity defendants to the extent that Plaintiffs can allege a sufficient constitutional injury. Second, Plaintiffs (in particular, Ms. Raney) may allege claims against defendants in their personal capacities if there is a sufficient basis in fact and law to do so.  Failure to file an Amended Complaint by **September 30, 2011**, will result in dismissal of this action.

DONE this 13th day of September, 2011.

_____/s/ W.  Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE