IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAYLA THOMAS, | ) | |
| HALEY PONDER, and | ) | |
| JOAN RANEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-245-WKW |
| | ) | [WO] |
| NANCY BUCKNER and | ) | |
| KIM MASHEGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion to Dismiss First Amended Complaint (Doc. # 43), to which Plaintiffs responded (Doc. # 45). After careful consideration of the arguments of counsel and the relevant law, the court finds that Defendants' motion is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, and 28 U.S.C. §§ 2201–02. Personal jurisdiction and venue are not contested, and there are adequate allegations in support of both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (citation omitted).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard also "calls for enough fact to raise

2

a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (*Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard.").

## III.  BACKGROUND

Plaintiffs Kayla Thomas, Haley Ponder, LaShannon Trammell, Lawrence Trammell, and Joan Raney originally filed suit against Nancy Buckner, the Alabama Department of Human Resources, Kim Mashego, the Shelby County Department of Human Resources, Jessica Foster, Renicia Swoopes, and Karol M. Beck.  On September 13, 2011, an order was issued that granted Defendants' first motion to dismiss; however, Plaintiffs were permitted to file an amended complaint to "seek prospective relief against the official capacity defendants to the extent that [they could] allege a sufficient constitutional injury," and "allege claims against [D]efendants in their personal capacities if there [was] a sufficient basis in fact and law to do so."  (Doc. # 41, at 41.)

Plaintiffs, with the exception of LaShannon Trammell and Lawrence Trammell, timely filed their eight-count amended complaint.[1]   Furthermore, only Defendants Nancy Buckner (the Commissioner of the Alabama Department of Human Resources) and Kim Mashego (the Director of the Shelby County Department of Human Resources) were named as Defendants.  Plaintiffs bring federal constitutional claims and state law claims against Defendants in their individual and official capacities.

By statute, the Alabama Department of Human Resources ("DHR") maintains a statewide central registry for reports of child abuse and neglect.  *See* Ala. Code. § 26-14-8.  Plaintiffs have all been placed onto the central registry as persons who have been "indicated" for child abuse/neglect.  In April 2010, Ms. Thomas was informed by letter that the Shelby County DHR had completed an initial assessment on the suspected child/abuse neglect and determined that it believed the report was indicated (true) and that the case would be disposed of as indicated.  The letter further stated that Ms. Thomas had the right to an administrative record review.  Ms. Thomas requested a hearing in order to deny and dispute the indicated disposition.  Ms. Thomas received no response to her request.  In September 2010, Ms. Thomas received a letter from Alabama DHR stating that an administrative record review had

---

[1]  For purposes of this opinion, from this point on, "Plaintiffs" refers to the Plaintiffs named in the amended complaint:  Kayla Thomas, Haley Ponder, and Joan Raney.

been completed and that it was determined that there was "enough credible evidence to support a dispositional finding of *indicated*, i.e. true." (Am. Compl. 14.)

Ms. Ponder was also informed by letter that the Shelby County DHR had investigated a report of child abuse/neglect and determined the report to be indicated. Ms. Ponder requested a hearing to dispute the allegations. In February 2010, Ms. Ponder was informed by Alabama DHR that an administrative record review had been completed and it was determined that there was "enough credible evidence to support a dispositional finding of *indicated*, i.e. true." (Am. Compl. 17.) Neither the letter received by Ms. Thomas nor the one received by Ms. Ponder stated that she was entitled to a hearing. Ms. Thomas and Ms. Ponder also did not receive any response to their requests for a hearing, other than the letters regarding the completion of an administrative record review.

Both Ms. Thomas and Ms. Ponder intend to be active in their children's lives and "to volunteer and participate in those childcare/daycare/kindergarten/public or private school institutions that [their children] will attend both now and in the future." (Am. Compl. 15, 19.) Additionally, both Ms. Thomas and Ms. Ponder seek to further their education. Ms. Thomas wishes to further her education in nursing and to seek employment as a nurse's aid, nurse, or other area of the medical profession. Ms. Ponder wishes to seek employment as a Certified Nursing Assistant or Nurse's Aid.

Both Plaintiffs fear that their prospects to volunteer and further their education and employment will be burdened or prohibited by having indicated dispositions on the central registry.

Unlike Ms. Thomas and Ms. Ponder, Ms. Raney never received a letter from DHR informing her of child abuse/neglect allegations against her.  Instead, Ms. Raney discovered them through happenstance when she volunteered as a preschool Sunday School teacher for her church.  The church required volunteers to undergo a background check, which included a check of the central registry.  The church contacted DHR and received information pursuant to the background check.  The Children's Minister of the church informed Ms. Raney that the information the church received from DHR "reported information that [Ms. Raney] 'needed to check into.'" (Am. Compl. 20.)

Ms. Raney contacted the Shelby County DHR twice.  On her second contact, Ms. Raney spoke with Defendant Kim Mashego.  Ms. Mashego informed Ms. Raney that there was an indicated disposition of child abuse/neglect and that Ms. Raney was listed on the central registry.  Ms. Mashego would not share or provide any other information to Ms. Raney about the report.  Ms. Raney asked Ms. Mashego how she could remove her name and information from the central registry, and in response,

6

Ms. Mashego told Ms. Raney, "There is nothing you can do." (Am. Compl. 21.) Ms. Raney contacted Alabama DHR, but no one returned her call.

As a result of learning about the indicated disposition, Ms. Raney has stopped volunteering at her church, fearing that another background check will again reveal information about the indicated disposition of child abuse/neglect. Furthermore, Ms. Raney wishes to volunteer at a free health clinic located in Shelby County but fears that her volunteer application will require a background check of the central registry. Ms. Mashego serves on the board of directors for the free health clinic, which furthers Ms. Raney's fear that her application will be denied.

## IV. DISCUSSION

### A.   <u>Official Capacity Procedural Due Process Claim (Count 1)</u>

In Count 1 of the amended complaint, Plaintiffs allege that Defendants violated their procedural due process rights by creating "a custom, policy or practice that results in the systematic denial of a request for a hearing" to challenge an indicated disposition. (Am. Compl. 31.) As explained in the previous opinion, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Arrington v. Helms*,

438 F.3d 1336, 1347 (11th Cir. 2006)).  Because it is clear that the alleged violation involves state action, only prongs 1 and 2 will be addressed.

### 1.    *Deprivation of a Protected Liberty Interest*

Plaintiffs once again allege that they have been deprived of a protected liberty interest under the stigma-plus test of *Paul v. Davis*, 424 U.S. 693 (1976).   To establish a protected liberty interest under the stigma-plus test, Plaintiffs "must be not only stigmatized but also stigmatized in connection with a denial [or alteration] of a [substantive] right or status previously recognized under state law."   *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005) (quoting *Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003)); *see also Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1188 (9th Cir. 2009) (stating that "*Paul* provides that stigma-plus applies when a right or status is 'altered *or* extinguished'") (quoting *Paul*, 424 U.S. at 711 (employing the verb "to alter" or the noun "alteration" five times in one page)). Plaintiffs allege that they have been stigmatized by being listed with an indicated disposition on the central registry and that their rights under state law have been altered due to the statutory consequences that follow from being listed on the central registry.

### a.    *Stigma*

There is no doubt that being labeled a child abuser satisfies the stigma prong, and Defendants do not contest this. *See, e.g.*, *Humphries*, 554 F.3d at 1186 ("[T]o be accused of child abuse may be our generations' contribution to defamation per se, a kind of moral leprosy.");[2] *Behrens*, 422 F.3d at 1260 ("There is no doubt that the [Florida Department of Children and Families] stigmatized Behrens when it 'verified' the child abuse allegations against him."). However, Defendants say that because Plaintiffs have not alleged that there was public disclosure of the indicated dispositions, Plaintiffs cannot make out a claim under the stigma-plus test. First, Defendants argue that there is no public disclosure because the central registry is not available to the public and the records are confidential.[3] *See* Ala. Code § 26-14-8. Defendants further argue that the possibility that information may be released is not enough to satisfy the publication requirement.

---

[2] In 2010, the Supreme Court reversed the district court's ruling regarding municipal liability. *See Los Angeles Cnty., Calif. v. Humphries*, 131 S. Ct. 447 (2010). That reversal, however, did not alter the district court's analysis of the stigma-plus test discussed in this opinion.

[3] While the records on the central registry are to be kept confidential, exceptions are created for certain classes of person. For example, records may be disclosed to, among others, "employers, prospective employers, or others" in cases of an indicated disposition. Ala. Code § 26-14-8(d).

Each Plaintiff alleges, however, that the indicated dispositions were in fact disclosed to third parties. Both Ms. Thomas and Ms. Ponder allege that the indicated dispositions were introduced by DHR during their child custody proceedings. (Am. Compl. 28.) The facts alleged by Ms. Raney create an inference that the indicated disposition was disclosed to her church's children's minister. Upon receipt of information from DHR pursuant to performing a volunteer background check, the children's minister informed Ms. Raney that the church had received information from DHR that she "needed to check into." (Am. Compl. 20.) Ms. Raney did so and discovered that there was an indicated disposition listed on the central registry. These facts support the proposition that DHR did disclose to the church that Ms. Raney had an indicated disposition on the central registry.

The types of disclosures in this case are similar to that in *Behrens*, where the Eleventh Circuit found the plaintiff was stigmatized. In that case, the Florida Department of Children and Families verified child abuse investigations against the plaintiff and maintained a record of it on its central abuse registry. Similar to Alabama, the reports are generally kept confidential; however, by statute, the reports may be disclosed to certain entities, including adoption agencies. The plaintiff contested that there was any child abuse. The plaintiff further alleged that he was unable to adopt because the verified child abuse report was disclosed to an adoption

10

agency.  While the Eleventh Circuit did not specifically address the publication requirement (or even if there is one), the plaintiff in *Behrens* alleged facts that supported an inference of a publication.  He alleged that the verified child abuse report was disclosed to adoption agencies, who by law must check the central abuse registry when considering potential adoptive parents.  Accordingly, to the extent that the test contains a publication requirement, it is met by the allegations in the amended complaint.  The stigma requirement of the stigma-plus test has been met.

### b.   Plus

Stigma alone will not rise to the level of a constitutional deprivation of a protected liberty interest that warrants due process protections.  Plaintiffs must also show that "a right or status previously recognized by state law was distinctly altered or extinguished" in connection with the stigma.  *Paul*, 424 U.S. at 711.

Defendants contend that Plaintiffs have not suffered a deprivation because Plaintiffs have not alleged that they have been discharged, demoted, or rejected from a job due to information in the registry, that they have lost custody of their children, or that they have lost any state-provided licenses.  Defendants argue that instead Plaintiffs have merely alleged speculative fears or concerns that may arise from being listed on the central registry.

It is true that Plaintiffs' amended complaint is devoid of any allegations of loss of employment, child custody, or licenses.  However, the stigma-plus test does not require a loss or extinguishment of a right or status.  Plaintiffs may also satisfy the plus requirement by showing that a right or status previously recognized by state law was *distinctly altered*.  *See Humphries*, 554 F.3d at 1188 ("[W]e need not find that an agency will necessarily deny the [plaintiffs] a license to satisfy the 'plus' test. . . . Rather, *Paul* provides that stigma -plus applies when a right or status is 'altered *or* extinguished.'" (quoting *Paul*, 424 U.S. at 711) (emphasis added in *Humphries*)).  As Defendants aptly note, a liberty interest under the United States Constitution has been defined as follows:

> [Liberty] denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  Contrary to Defendants' assertions, Plaintiffs have alleged distinct alterations of the rights listed in *Meyers*, not simply fears and concerns that their rights may be lost.

First, the stigma associated with being labeled as a child abuser affects Plaintiffs' rights to establish a home and bring up children.  The right to family integrity is a well-established liberty interest, worthy of the constitutional protection

of procedural due process.  *See Stanley v. Illinois*, 405 U.S. 645 (1972) (holding that under the Due Process Clause of the Fourteenth Amendment, unwed father was entitled to hearing on his fitness as parent before his children could be taken from him in dependency proceedings instituted by the State of Illinois after the death of the children's natural mother); *see also Prince v. Massachusetts,* 321 U.S. 158, 166 ( 1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. . . .  And it is in recognition of this that [prior] decisions have respected the private realm of family life which the state cannot enter."); *Meyer*, 262 U.S. at 390.  The Eighth Circuit in *Bohn v. County of Dakota*, 772 F.2d 1433 (8th Cir. 1985), found that the right to family integrity was affected by the plaintiff being labeled as a child abuser.  *See also* 772 F.2d at 1436 n.4 (finding an additional protectable reputation interest because "[t]he stigma [the plaintiff] suffers as a reported child abuser undoubtedly has eroded the family's solidarity internally and impaired the family's ability to function in the community").

Similarly, Plaintiffs' rights to family integrity have been distinctly altered by their inclusion on the central registry as child abusers.  Ms. Thomas and Ms. Ponder allege that they intend to be active in their children's lives and will "volunteer and participate in those childcare/daycare/kindergarten/public or private school

institutions that [their] child[ren] will attend both now and in the future." (Am. Compl. 15, 19.) Their rights to family integrity are distinctly altered because it is more difficult for them to participate in their children's lives. In today's society, it is common practice for schools and organizations catering to children to require background checks (even if not statutorily required). Having indicated dispositions (true) on the central registry makes it highly unlikely that Ms. Thomas and Ms. Ponder will be permitted to volunteer and participate to the fullest measure contemplated by this country's notions of liberty and family integrity.

Ms. Thomas and Ms. Ponder should not be forced to wait until they are rejected as participants in their children's activities before they can bring a procedural due process claim. Anticipatory waiting compounds the harm, as they are denied their protected parental rights and the indicated disposition of child abuse/neglect is spread into the community. *See, e.g.*, *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (holding that the plaintiff's claim was ripe even though she had not yet suffered a deprivation of employment or other loss as a result of being listed on the Central Register because "[h]er presence on the Central Register . . . [was] a direct threat not only to her reputation but to her employment prospects" and it was "likely that the employer [would] choose not to hire her due to her status").

14

Second, Plaintiffs' abilities to engage in any of the common occupations of life have been distinctly altered.  Ms. Thomas alleges that she "has a desire to pursue further education in the nursing field, and to seek employment as a nurse's aid, nurse or in other areas of the medical profession."  (Am. Compl. 15.)  Ms. Ponder "intends to pursue further education and desires to work as a Certified Nursing Assistant or Nurse's Aid."  (Am. Compl. 19.)   Having an indicated disposition of child abuse/neglect on the central registry places a tangible burden on their abilities to seek employment in their chosen field.  By statute, DHR may disclose indicated dispositions to employers, potential employers, and *others*.

In *Valmonte*, the Second Circuit found there was a protected liberty interest because New York's laws created a "statutory impediment to employment."  18 F.3d at 1002.  The plaintiff alleged that she would apply for a position within the child care field but for her presence on the central register.  *Id.* at 999.  New York's statutory scheme required child care providers to consult the central register.  If they chose to hire an individual on the list, by law, the providers were required to explain the reasons for hiring the individual in writing.  *Id.* at 1001.  The Second Circuit found that this placed "a tangible burden on [the plaintiff's] employment prospects."  *Id.*

While Alabama's statutory scheme does not require employers to explain their reasoning for hiring a person listed with an indicated disposition on the central

15

registry, the listing still creates a tangible burden on Plaintiffs' employment prospects because an employer would be less likely to hire them for a position in the medical field. Indeed, having Plaintiffs on staff arguably could present a legal liability. *See Dupuy v. Samuels,* 397 F.3d 493, 503 (7th Cir. 2005) (holding that a protected interest was at stake because "child care workers effectively are barred from future employment in the child care field once an indicated finding of child abuse or neglect against them is disclosed to, and used by, licensing agencies and present or prospective employers").

Furthermore, a listing of an indicated disposition places a tangible burden on Ms. Raney's ability to volunteer. In *Humphries,* the Ninth Circuit concluded that the plaintiffs satisfied the "plus requirement" because they "expressed a desire to work or volunteer at the Florence Crittenton Center in Los Angeles, a community center offering child care and a variety of other services." 554 F.3d at 1183. The court concluded that the listing on California's central registry "directly affected . . . their eligibility to work or volunteer at a local community center." *Id.* at 1188. Likewise, Ms. Raney's indicated listing on the central listing places a tangible burden on her ability to volunteer with local organizations. The facts alleged by Plaintiffs indicate that Ms. Raney's church checks the central registry as part of a background check on volunteers. Ms. Raney wishes to engage in volunteer activities at her church that

16

involve children; however, her ability to volunteer is now altered because it is unlikely that her church would want to allow someone with an indicated disposition on the central registry to have contact with their congregation's youth.  Furthermore, Ms. Raney's fear that her volunteer application to help at the free medical clinic will be denied is not unwarranted.  Ms. Mashego is on the board of directors of the free clinic, and Ms. Raney has alleged that she and Ms. Mashego have spoken on the phone regarding Ms. Raney's indicated disposition.  It was during this conversation that Ms. Mashego informed Ms. Raney that there was nothing she could do to remove her name from the central registry.

Defendants point to *Smith* as controlling precedent regarding allegations of loss or alteration of a liberty interest; however, that case is distinguishable.  In *Smith*, the plaintiff was a minor who had been listed on Alabama's central registry with an indicated disposition of child sexual abuse.  The plaintiff alleged that "he ha[d] a liberty interest in not being designated by the defendants . . . as having perpetrated a sexual abuse or offense on a child."  *Smith*, 322 F.3d at 1296.  In determining that the plaintiff had not alleged a protected liberty interest, the court noted that the plaintiff's complaint did "not at any point allege that [the plaintiff] was denied any right or status other than his not being branded a child sexual abuser" and that he did "not contend that he was discharged, demoted, or rejected from a job due to the

information on the Registry." *Id.* at 1297.  The Eleventh Circuit "agree[d] that [the plaintiff's] employment and custody rights in the future could be affected adversely due to the information on the Registry," but that the claim was premature at the time. *Id.*

Plaintiffs do not simply claim that they have a liberty interest in not being labeled as child abusers.  Unlike the plaintiff in *Smith*, who was a minor, Plaintiffs are adults and more importantly, parents.  They are not merely asserting that one day they might have children or might try to get a job where an indicated disposition could affect their rights.  Plaintiffs are presently engaging in parenting and working.

Similarly, *Behrens* is not controlling because the plaintiff in that case alleged that he was deprived of his right to adopt a child.  Because adoption is not a right under Florida law, the Eleventh Circuit found that the plaintiff had not presented a constitutional deprivation of liberty.  *Behrens* at 1261.

### 2. *Adequacy of Procedural Safeguards (Prong 3)*

Plaintiffs allege that the procedures in place are constitutionally inadequate because Plaintiffs have no way to seek removal of their names and information from the central registry.  Plaintiffs allege that a pre-deprivation hearing should be required.  Defendants argue that Plaintiffs cannot show that there are constitutionally inadequate state procedures and further argue that Plaintiffs have failed to take

advantage of the state procedures already in place.  Failing to take advantage of procedures provided for by state law "does not constitute a sign of their inadequacy." *McKinney v. Pate*, 20 F.3d 1550, 1565 (11th Cir. 1994).  Defendants cite *Phillips v. Thomas*, 555 So. 2d 81 (Ala. 1989), for potential adequate state measures that Plaintiffs could have used.  That is, Plaintiffs could have filed a suit in state court to compel the performance of a legal duty, to enjoin the enforcement of an unconstitutional law, or to compel the performance of a ministerial act.  They also could have brought a suit under the Declaratory Judgment Act.  *See Phillips*, 550 So. 2d at 83.

Defendants' argument that Plaintiffs failed to take advantage of adequate state procedures is unpersuasive.  The remedies listed in *Phillips* were included in the Alabama Supreme Court's discussion of circumstances when sovereign immunity is not available to state officials.  Defendants' argument that Plaintiffs could have filed suit in state court ignores the heart of Plaintiffs' claims.   Under Alabama Administrative Code 660-5-34.07(1), all persons with indicated dispositions "must be given an opportunity to disagree with [DHR's] findings through either a CA/N hearing or an administrative record review."  Plaintiffs allege that Defendants, pursuant to their statutory authority, established a custom or policy in which only administrative record reviews are given and all CA/N hearings are denied.

19

Administrative record reviews are conducted by a DHR staff-member who is not involved in the case. The reviewer has the authority to overturn the dispositional finding, and the reviewer's "decision is final." Administrative Code 660-5-34.07(7). The reviewer looks to the initial assessment to determine if it "contains sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect." Administrative Code 660-5-34.07(3). Thus, upon this decision being made final, Plaintiffs have had no other procedure by which to remove their names from the central registry. The procedures listed by Defendants do not provide Plaintiffs with a way to seek removal of their names from the central registry. Furthermore, Plaintiffs did take advantage of the procedures available to them. Ms. Ponder and Ms. Thomas asked for a hearing, but were only given an administrative record review, and received no response regarding their request for a hearing. Ms. Raney was told by Ms. Mashego that there was nothing she could do to get her name off the central registry. These allegations are sufficient to show that the procedures are constitutionally inadequate, and, thus, Defendants' motion to dismiss is due to be denied on this claim.

**B.    Entitlement Theory of Procedural Due Process (Count 2)**

Plaintiffs title Count 2 of the amended complaint as "Second Cause of Action (Claims Pursuant to 42 U.S.C. [§] 1983)." It is unclear what claim Plaintiffs attempt

to plead; however, it appears Plaintiffs are alleging a second procedural due process claim based on a "right to a hearing which was previously recognized by State law."[4] (Am. Compl. 33.)   Plaintiffs again appear to advance an entitlement theory of procedural due process based on a state-provided right to a hearing.  This theory was rejected in the prior opinion.  (*See* Doc. # 41, at 32–41.)  Plaintiffs have not remedied any of the defects in this theory as mentioned in the prior opinion, and accordingly, this claim is due to be dismissed.[5]

## C.   <u>Qualified Immunity on Individual Capacity Claims for Damages</u>

Defendants assert qualified immunity for Plaintiffs' personal capacity claims for damages.  In order to overcome qualified immunity, Plaintiffs must demonstrate "'that: (1) [Defendants] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'"  *Townsend v. Jefferson Cnty.*, 601

---

[4]   In alleging this cause of action, Plaintiffs use the language of the stigma-plus test for procedural due process claims and assert that they are "without a constitutionally adequate and sufficient process by which they can challenge the 'indicated disposition' and/or continued listing on the Central Registry."  (Am. Compl. 33.)  These allegations lead the court to find that Plaintiffs attempt to allege a second procedural due process claim.

[5]   It seems that Plaintiffs are trying to recast a state suit for compelling performance of a state official into a federal constitutional claim.  As the Alabama Supreme Court stated in *Phillips*, a "state official is not immune from a suit to compel the performance of a legal duty." 555 So. 2d at 83.  Plaintiffs' arguments that they are legally entitled to a hearing by DHR and that Defendants are denying Plaintiffs a hearing would be the type of allowable suit contemplated in *Phillips*.  Plaintiffs could seek a writ from an Alabama state court (assuming it was properly pled) requesting that Defendants be forced to comply with Alabama law and provide them with a hearing.

21

F.3d 1152, 1158 (11th Cir. 2010) (internal quotation marks omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* (quoting *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

As discussed above, Plaintiffs have properly alleged that Defendants violated their constitutional rights to procedural due process. Plaintiffs, however, cannot demonstrate the clearly established prong, and thus, Defendants are entitled to qualified immunity. Plaintiffs argue that *Bohn, Dupuy*, *Humphries*, and *Valmonte* clearly establish their constitutional rights, but do not point to any case law from the Eleventh Circuit. Plaintiffs' reliance on law from outside this circuit is not enough to show that the right was clearly established. *See Hansen v. Soldenwagner*, 19 F.3d 573, 578 n.6 (11th Cir. 1994) ("[T]he case law of one other circuit cannot settle the law in this circuit to the point of it being 'clearly established.'"); *Courson v. McMillian*, 939 F.2d 1479, 1497 n.32 (11th Cir. 1991) (looking to precedent from the U.S. Supreme Court and the Eleventh Circuit, and noting that precedent from the highest state court in which the case originates also may clearly establish a right).

22

Thus, Plaintiffs' federal claims against Defendants in their individual capacities are due to be dismissed.[6]

## D.   __State Law Claims (Counts 5, 6, and 7)__

In their amended complaint, Plaintiffs, for the first time, bring state law claims against Defendants.  Defendants assert multiple forms of immunity under state law. First, Defendants claim that they are entitled to sovereign immunity on Plaintiffs' state law claims against them in their official capacities for damages.  "A complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901."  *Ex Parte Butts*, 775 So. 2d 173, 177 (Ala. 2000).  Thus, the state law claims against Defendants in their official capacities for damages are due to be dismissed.

Second, Defendants assert that they are entitled to state-agent immunity under *Ex parte Cranman*, 732 So. 2d 392 (Ala. 2000), on Plaintiffs' state law claims against them in their individual capacities.  State-agent immunity may be withheld "upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."  *Giambrone v. Douglas*, 874 So.2d 1046, 1057 (Ala.

---

[6] Because Defendants' motion to dismiss is due to be granted on Plaintiffs' personal capacity claims against them, there is no need to address the parties' arguments regarding supervisory liability under § 1983, as those arguments pertain to individual capacity claims for damages.

2003).  This showing would require the court to examine evidence.  Because the court cannot venture outside the four corners of the complaint, Defendants' motion to dismiss the individual-capacity, state-law claims based on state-agent immunity is due to be denied at the motion to dismiss stage.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion to Dismiss First Amended Complaint (Doc. # 43) is GRANTED in part and DENIED in part.

(1)    The motion to dismiss is GRANTED as to:  (a) the federal claims against Defendants in their individual capacities (Count 1); (b)  Count 2; and (c) the state law monetary claims against Defendants in their official capacities (Counts 5, 6, and 7);

(2)  The motion to dismiss is DENIED as to the procedural due process claim against Defendants for prospective relief in their official capacities (Count 1) and the state law claims against Defendants in their individual capacities (Counts 5, 6, and 7).

It is further ORDERED that Counts 3 and 8 are DISMISSED because they are prayers for relief that have been incorrectly enumerated as causes of action and are redundant as they have already been included in the amended complaint's prayer for relief.

In sum, Count 1 remains against Defendants in their official capacities for prospective relief and Counts 4, 5, and 6 remain against Defendants in their official capacities for prospective relief and in their individual capacities.

DONE this 11th day of September, 2012.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE