IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAYLA THOMAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-245-WKW |
| | ) | (WO) |
| NANCY BUCKNER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This case concerns Plaintiffs' allegations that Alabama Department of Human Resources ("DHR") officials deprived them of procedural due process in violation of 42 U.S.C. §1983 and committed several state law torts when DHR placed them on a registry of "indicated" child abusers without affording them a due process hearing, and then disclosed their status as registered "indicated" child abusers to others.

In November 2013, Defendants filed a motion to stay this action to allow them to provide Plaintiffs due process hearings.  (Doc. # 73.)  The court granted the motion and stayed the case. (Doc. # 76.)  After the parties reported that the administrative hearings had been concluded in Plaintiffs' favor and that the "indicated" statuses had been changed to "not indicated," the court entered an

order directing Plaintiffs to show cause "why their official-capacity claims against Defendants, alleging violations of their procedural due process rights under the Fourteenth Amendment, should not be dismissed, and why supplemental jurisdiction should not be declined over Plaintiffs' state-law claims pursuant 28 U.S.C. § 1367(c)." (Doc. # 87.) Plaintiffs responded to the order to show cause. (Doc. # 88.) Defendants filed a reply to Plaintiffs' response to the order. (Doc. # 91.) However, neither side adequately addressed the issues presented in the show cause order. The parties' briefs indicate that they are confused about – and do not agree on – which claims remain pending in this case. Further, the parties spent the majority of their briefs addressing the merits of a motion for attorney's fees which has yet to be filed.

After reviewing the case file in detail and considering the parties' arguments and the governing law, the court concludes that Plaintiffs' remaining § 1983 claims are due to be dismissed as moot. Pursuant 28 U.S.C. § 1367(c), the court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Accordingly, this case is due to be dismissed.

## II.    PROCEDURAL HISTORY

### A.    Plaintiffs' Remaining Claims

On April 4, 2011, Plaintiffs Kayla Thomas, Haley Ponder, LaShannon Trammel, Lawrence Trammel, and Joan Raney filed a complaint against Nancy

Buckner, in her official capacity as the Commissioner of DHR; Kim Mashego, in her official capacity as the Director of the Shelby County Department of Human Resources ("Shelby County DHR"); and several other Defendants.   Plaintiffs alleged that Defendants had investigated reports of child abuse and neglect, concluded that the reports were substantiated, and placed Plaintiffs on a DHR registry of "indicated" perpetrators of child abuse.   Plaintiffs averred that their constitutional and federal statutory due process rights had been violated because they were not afforded a hearing prior to being placed on the registry and because the persons investigating the child abuse allegations were not properly trained. Plaintiffs sought compensatory and punitive damages, as well as injunctive and declaratory relief.  (Doc. # 1-2 at 18-22.)

On September 13, 2011, the court entered a memorandum opinion and order (Doc. # 41) on Defendants' motion to dismiss.  (Doc. # 21.)  The court dismissed Plaintiffs' claims, but allowed Plaintiffs an opportunity to amend the complaint. The court stated: "Plaintiffs may seek prospective relief against the official capacity defendants to the extent that Plaintiffs can allege a sufficient constitutional injury.   Second, Plaintiffs (in particular, Ms. Raney) may allege claims against defendants in their personal capacities if there is a sufficient basis in fact and law to do so."  (Doc. # 41 at 41.)

On September 29, 2011, three of the original plaintiffs (Kayla Thomas,

Haley Ponder,[1] and Joan Raney) filed an amended complaint against Nancy Buckner, in her personal capacity and in her official capacity as Commissioner of DHR, and against Kim Mashego, in her personal capacity and in her official capacity as Director of Shelby County DHR.  (Doc. # 42.)  Plaintiffs asserted the following claims:

- Count 1:      a § 1983 claim for deprivation of procedural due process (Doc. # 42 at 31-32);

- Count 2:      a § 1983 claim for deprivation of a "right previously recognized under state law" (Doc. # 42 at 32-33);

- Count 3:      a "claim for injunctive relief pursuant to" § 1983 (Doc. # 42 at 33);

- Count 4:      a "claim for declaratory relief pursuant to" § 1983 (Doc. # 42 at 34);

- Count 5:      a state-law claim for negligence and wantonness (Doc. # 42 at 34);

- Count 6:      a state-law claim for conversion (Doc. # 42 at 35);

- Count 7:      a state-law claim for "suppression of material fact" (Doc. # 42 at 35-36); and

- Count 8:      a state-law claim for injunctive relief (Doc. # 42 at 36).

Plaintiffs sought compensatory and punitive damages, injunctive and declaratory relief, and an award of attorney's fees and costs.  (Doc. # 42 at 37-38.)

---

[1] On October 2, 2013, the court dismissed Plaintiff Haley Ponder's claims without prejudice for failure to prosecute.  (Doc. # 71.)  Only Kayla Thomas and Joan Raney remain as Plaintiffs.

On October 7, 2011, the Defendants moved to dismiss the amended complaint (Doc. # 43). On September 11, 2012, the court entered a memorandum opinion and order (Doc. # 47) granting in part and denying in part Defendants' motion to dismiss. The court ruled as follows on Plaintiffs' claims:

- Count 1: dismissed in part with respect to all claims for monetary relief[2] against Defendants in their individual capacities on grounds of qualified immunity (Doc. # 47 at 21-24);

- Count 2: dismissed entirely for failure to state a claim upon which relief can be granted (Doc. # 47 at 20-21, 24);

- Count 3: dismissed entirely as redundant and not a cause of action (Doc. # 47 at 24);

- Count 4: the court did not address Count 4 (Doc. # 47);

- Counts 5, 6, and 7 (the state-law claims): dismissed in part on grounds of sovereign immunity with respect to all money damages claims against Defendants in their official capacities (Doc. # 47 at 23-24); and

- Count 8: dismissed entirely as redundant and not a cause of action (Doc. # 47 at 24.)

The court concluded: "In sum, Count 1 remains against Defendants in their official capacities for prospective relief and Counts 4, 5, and 6 remain against

---

[2] As to Count 1 of the amended complaint, it does not appear that Plaintiffs attempted to state a claim for injunctive relief against Defendants in their individual capacities. *See Ingalls v. U.S. Space & Rocket Ctr.,* No. 2:14-CV-699-WKW, 2015 WL 4528687, at *8 (M.D. Ala. July 27, 2015) (noting that district courts in this Circuit have found that "individual-capacity suits under § 1983 for equitable relief are not sustainable" (citation and internal quotation marks omitted)). In any event, as explained in Part III.A. of this memorandum opinion, all § 1983 claims for injunctive and declaratory relief in the amended complaint are now moot.

Defendants in their official capacities for prospective relief and in their individual capacities." (Doc. # 47 at 25.) This summary statement was not consistent with the court's findings within the memorandum opinion and order. On September 12, 2013, Defendants moved for clarification of the court's September 11, 2012 Order, or alternatively, to dismiss certain claims in the complaint. (Doc. # 69.)

On October 15, 2013, the court entered an order (Doc. # 72) granting the motion for clarification (Doc. # 69) as follows: (1) dismissing Count 4 of the amended complaint; (2) dismissing the state-law claims (Counts 5, 6, and 7) against Defendants in their official capacities on the basis of Eleventh Amendment immunity; and (3) dismissing the state-law claims (Counts 5, 6, and 7) for injunctive relief against Defendants in their individual capacities as "meaningless." (Doc. # 72.)

The court concluded its October 15, 2013 order with the following statement: "Accordingly, Count 1 remains against Defendants in their official capacities for prospective relief."[3] (Doc. # 72 at 2.) Based on this statement,

_____

[3] The amended complaint does not clearly state that Plaintiffs seek money damages against Defendants in their official capacities in conjunction with Count 1. In Count 1 of the original complaint, Plaintiffs asserted a procedural due process claim and sought monetary relief against Defendants in their official capacities. In granting the motion to dismiss Count 1 of the original complaint, the court ruled that the individual defendants in their official capacities are protected by Eleventh Amendment immunity and are not "persons" for purposes of § 1983 monetary relief. (Doc. # 41 at 15-16.) The court allowed Plaintiffs an opportunity file an amended due process claim to "pursue prospective (*i.e.*, injunctive and declaratory) relief under § 1983 (within the confines discussed elsewhere in this opinion) – to the extent that there is a viable § 1983 claim – against the individual Defendants in their official capacities." (Doc. # 41

Defendants take the position that there are no state-law claims remaining in the case.   Defendants are incorrect.  The court has not dismissed the state-law claims for money damages claims against Defendants in their individual capacities.

The following claims of Plaintiffs Kayla Thomas and Joan Raney are the only claims in the amended complaint that have not been dismissed:

- Count 1:  a § 1983 procedural due process claim for injunctive and declaratory  relief against Nancy Buckner and Kim Mashego in their official capacities, and

- Counts 5, 6, and 7 (state-law claims for negligence and wantonness, conversion, and "suppression of material fact") for monetary relief against Nancy Buckner and Kim Mashego in their individual capacities.

**B.**    **Other Relevant Procedural History**

On October 10, 2012, the court entered a scheduling order. (Doc. # 53.) Twice, on the parties' joint motions, the deadlines in the scheduling order were extended.  Ultimately, the discovery deadline was set for November 27, 2013; the dispositive motion deadline was set for January 10, 2014; the pretrial conference was set for April 10, 2014; and trial was set for the term beginning May 5, 2014. (Doc. # 64.)

---

at 15, 41.)  If Plaintiffs had attempted to state another due process claim for monetary damages against Defendants in their official capacities, it would have been subject to dismissal for the same reasons that the claim was dismissed from the original complaint.  There is no reason to conclude that Plaintiffs intended to engage in such futility in violation of a court order. Moreover, all parties appear to be operating under the assumption that no official-capacity § 1983 claims for monetary relief are pending.  Accordingly, the court concludes that, in Count 1 of the amended complaint, Plaintiffs did not attempt to state a claim for monetary relief against Defendants in their official capacities.

On November 19, 2013, Defendants moved for a stay of the remaining deadlines in the scheduling order and for a stay of Nancy Buckner's deposition pending the resolution of the administrative hearings that DHR had voluntarily agreed to provide Plaintiffs.  (Doc. # 73.)  In their motion to continue, Defendants specifically disclaimed any liability on Plaintiffs' claims.   (Doc. # 73 at ¶ 1.) Plaintiffs opposed the motion, objecting both to a stay of the deposition and to a stay of the case.  (Doc. # 74.)

On November 21, 2013, the Magistrate Judge granted the motion to stay the deposition of Nancy Buckner.  (Doc. # 75.)  On November 22, 2013, the court granted the motion to stay the case pending resolution of the administrative hearing.  (Doc. # 76.)

On August 26, 2014, the parties filed a joint status report informing the court that an administrative law judge ("ALJ") had entered final decisions in Plaintiffs' favor and that DHR had changed the "indicated" dispositions to "not indicated." (Doc. # 86.)

On September 2, 2014, the court ordered Plaintiffs to "show cause . . . why their official-capacity claims against Defendants, alleging violations of their procedural due process rights under the Fourteenth Amendment, should not be dismissed, and why supplemental jurisdiction should not be declined over Plaintiffs' state-law claims pursuant 28 U.S.C. § 1367(c)."  (Doc. # 87.)   Both

8

parties have filed briefs with respect to the show cause order, and the issues raised in the show cause order are ready to be addressed.  (Doc. # 88; Doc. # 91.)

## III.  DISCUSSION

### A.   Plaintiffs' Remaining § 1983 Due Process Claims for Declaratory and Injunctive  Relief Against Defendants in Their Official Capacities Are Moot.

Plaintiffs' amended complaint included a request for an injunction requiring Defendants to implement procedures for providing due process hearings, to properly train DHR personnel in the investigation and disposition of reports of child abuse, to provide Plaintiffs due process hearings, and to expunge Plaintiffs' names from the registry until the conclusion of the due process hearings.  (Doc. # 42 at 37-38.)  However, Plaintiffs concede that, since the filing of their amended complaint, DHR provided administrative hearings in which they successfully challenged the "indicated" disposition, and the "indicated" dispositions have been removed.  (Doc. # 86; Doc. # 88 at 9.)  Plaintiffs admit that they "succeeded on their [§ 1983] claims by winning the Administrative Hearings" (Doc. # 88 at 8); that "the victory at the hearings . . . removed the legal impediment constituting a tangible loss of employment opportunities" (Doc. # 88 at 9); and that, "[b]ecause Plaintiffs won, the ALJ entered enforceable judgments preventing Defendants and DHR from maintaining the indicated dispositions and disclosing the indicated dispositions and the information contained in the reports."  (Doc. # 88 at 9).

9

Ordinarily, "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998). Therefore, the standard for determining whether defendant's voluntary conduct has mooted a case is a "stringent" one. *Id.* A case becomes moot only if subsequent events make it "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Laidlaw*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (quoting *Concentrated Phosphate*, 393 U.S. at 203).

In this case, it is undisputed that the challenged conduct cannot reasonably be expected to recur *as to these Plaintiffs*.[4]  Although there is no evidence that

---

[4]  Some of the prospective injunctive relief requested in Plaintiffs' amended complaint, such as requiring DHR to cease its current procedures and to implement new procedures, could benefit unnamed persons who might in the future be placed on the registry as "indicated" child

DHR has changed its policies, there is no reason, short of purely imaginative speculation, to suspect that Plaintiffs will again be the subject of child abuse investigations in which DHR's policies could again deprive them of due process. Therefore, Plaintiffs no longer have a concrete interest in injunctive or declaratory relief. *See Laidlaw*, 528 U.S. at 192 (noting that courts are not "license[d] to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, as when the parties have settled or a plaintiff pursuing a nonsurviving claim has died"); *DeFunis v. Odegaard*, 416 U.S. 312, 319-20 (1974) (per curiam) (holding that, despite the fact that a law school's challenged admissions policy had

---

abusers without a due process hearing.  There is no evidence that Defendants have changed (or intend to change) DHR's general policies or procedures as to anyone but these Plaintiffs. In fact, Defendants represented to the court that, by providing due process hearings to Plaintiffs, they did not admit liability or concede any defenses, and they merely sought to secure a "just, speedy, and inexpensive" resolution of this particular case.  (Doc. # 73 at ¶ 1.)  Thus, it is not "absolutely clear" that Defendants will never again place *someone* on the registry of indicated child abusers without affording a due process hearing. *See Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) (noting that finding of a likelihood of recurrence includes consideration of "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction" and "whether the government has consistently applied a new policy or adhered to a new course of conduct." (citations and internal quotation marks omitted)); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (noting that a finding of likely recurrence includes consideration of "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to [avoid] suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability."). However, in ruling on the motion to dismiss the original complaint, the court concluded that Plaintiffs could not assert § 1983 claims on behalf of other unnamed individuals. (Doc. # 41 at 12-13).  Moreover, Plaintiffs do not assert that the interest of unnamed individuals in averting hypothetical future due process violations prevents a finding of mootness. In any event, as the Supreme Court has noted in a case concerning standing rather than mootness, "[t]he Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

not changed, a non-class-action challenge to the constitutionality of that policy was mooted when the plaintiff, who had been admitted pursuant to a preliminary injunction, neared graduation and would be allowed to finish his final term); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (holding that a non-class-action challenge to a state constitutional amendment declaring English the official State language became moot when the plaintiff, a state employee who sought to use her bilingual skills, took a job in the private sector where her speech was no longer governed by the challenged amendment); *see also Camreta v. Greene*, 131 S. Ct. 2020, 2026 (2011) (holding that an appeal as to the constitutionality of a child protective service worker's warrantless interview of a child "ha[d] become moot because the child ha[d] grown up and moved across the country, and so w[ould] never again be subject to the Oregon in-school interviewing practices whose constitutionality [was] at issue"). *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (declining to apply the voluntary cessation exception to the mootness doctrine on grounds that the plaintiff still had a personal, concrete stake in the outcome of an appeal).

Plaintiffs argue that the interim relief they received does not remedy past injuries such as loss of employment opportunities and loss of reputation. (Doc. # 88 at 6-8.) However, Plaintiffs' § 1983 claims for monetary damages have already been dismissed, and Plaintiffs do not explain how claims for *prospective* relief

could possibly redress their *past* injuries.  Plaintiffs themselves do not contend that injunctive or declaratory relief is required to alleviate the prospective injuries that were the subject of their § 1983 claims.  The favorably resolved due process hearings and the removal of Plaintiffs' names from the registry have already completely and irrevocably eradicated the prospective effects of the alleged constitutional violations.  *See Harrell v. Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (holding that a case will be found moot on the basis of the defendant's voluntary cessation of challenged conduct only if "(1) 'it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)); *Jews for Jesus*, 162 F.3d at 629 ("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief.").

Accordingly, Plaintiffs' remaining claims for injunctive and declaratory relief are due to be dismissed as moot.

## B.   Plaintiffs' Intent to File a Motion for Attorney's Fees Does Not Preclude Dismissal of the § 1983 Claims as Moot.

Plaintiffs argue that their § 1983 claims are not moot because, in their amended complaint, they included a request for attorney's fees and costs that has not yet been adjudicated.  (Doc. # 88 at 10.)  Plaintiffs do not cite any legal

authority for this argument.  Defendants do not address this argument.

Costs and attorney's fees are not an element of Plaintiffs' damages or part of the substantive merits of the § 1983 claim.[5]  Rather, attorney's fees in a civil rights case are considered an element of costs due the prevailing party, which is not always the plaintiff in every case.  In fact, it is common (and the preferred) practice to enter final judgment on § 1983 claims before deciding a 42 U.S.C. § 1988 motion for attorney's fees.  *See* Fed. R. of Civ. P. 58(e) ("Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees."); *Gordon v. Heimann*, 715 F.2d 531, 535 (11th Cir. 1983)

---

[5] *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain.  Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action."); *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451-52 (1982) ("[A] request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action . . . . Section 1988 provides for awards of attorney's fees only to a 'prevailing party.'  Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits – an inquiry that cannot even commence until one party has 'prevailed.'  Nor can attorney's fees fairly be characterized as an element of 'relief' indistinguishable from other elements.  Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action.  Their award is uniquely separable from the cause of action to be proved at trial."); *Adeduntan v. Hosp. Auth. of Clarke Cty.*, 249 F. App'x 151, 154 (11th Cir. 2007) (recognizing that, when a party seeks an award of attorney's fees based on a prevailing party statute, rather than pursuant to a contract, the request for attorney's fees is collateral to the merits of the action); *Fluor Constructors, Inc. v. Reich*, 111 F.3d 94, 96 (11th Cir. 1997) ("[B]oth the imposition and the amount of attorney's fees are always collateral to the merits of an action.").

("Because under the statute attorneys' fees can only be awarded to prevailing parties, attorneys' fees under section 1988 will usually be sought only after litigation.").

Moreover, although Plaintiffs did include a request for an award of attorney's fees in their amended complaint (Doc. # 42 at 38 ¶ J), Plaintiffs have not filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988.  "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A); *see also* Fed. R. Civ. P. 54 advisory committee's note (stating that section 54(d)(2), which was added to Rule 54 in 1993, "establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as 'costs'").

Therefore, the court will not delay dismissal of the § 1983 claims in anticipation of a motion for attorney's fees that has not been filed.  Fed. R. Civ. P. 54(d)(2)(A).  *Cf. Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 480 (1990) ("Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to" allow a plaintiff to "obtain reimbursement of sunk costs" in the form of a § 1988 attorney's fees award).

**C.**   **28 U.S.C. § 1367(c) Gives this Court Discretion to Decline to Exercise Supplemental Jurisdiction After Dismissing Plaintiffs' § 1983 Claims.**

Plaintiffs' state-law claims remain on the basis of the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).   28 U.S.C. § 1367(c) allows for dismissal of supplemental state-law claims under specified circumstances. Defendants argue that § 1367(c) is irrelevant because all supplemental state-law claims have already been dismissed.   (Doc # 91 at 3.)   Defendants are incorrect. As explained in Section I.A. of this memorandum, Counts 5, 6, and 7 of the amended complaint (state-law claims for negligence and wantonness, conversion, and "suppression of material fact") remain pending to the extent that Plaintiffs seek monetary relief from Nancy Buckner and Kim Mashego in their individual capacities.

28 U.S.C. § 1367(c)(3) provides that "[t]he district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."   Plaintiffs argue that § 1367(c)(3) would be inapplicable "if this Court were to allow plaintiff [sic] to proceed on its claim for attorney's fees" because "then the federal claims would remain pending before this Court (at least with respect to the claim for attorney's fees) and the retention of supplemental jurisdiction over the state-law claims would be appropriate."   (Doc. # 88 at 12.)   As explained in Part III.B. of this memorandum opinion, Plaintiffs have not filed a motion for attorney's fees.

16

Plaintiffs have not supplied, and the court has not found, any legal support for the proposition that, after all underlying federal-law claims have been dismissed, the *possibility* of a motion for attorney's fees pursuant to § 1988 provides an independent basis of original jurisdiction that can, in turn, render § 1367(c)(3) inapplicable.

Moreover, 42 U.S.C. § 1988(b) provides for an award of attorney's fees to "the prevailing party . . . as part of the costs."  Thus, as with other proceedings to award costs, § 1988's provision for an award of attorney's fees is a matter of the court's ancillary enforcement jurisdiction, which is a distinctly separate basis for jurisdiction that allows a court to consider awarding attorney's fees even when the court has no original jurisdiction over the substantive claims in the case.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (noting that district courts have jurisdiction to award costs as a "collateral issue" even after an underlying action is dismissed for lack of jurisdiction because a proceeding for an award of costs is an "independent proceeding supplemental to the original proceeding"); *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989) (holding that, because an award of attorney's fees pursuant to § 1988 is "ancillary" to a claim for injunctive relief, the Eleventh Amendment does not bar the award or preclude a district court from settling a dispute over the proper way to calculate the fees); *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451-52 (1982) (holding that a

motion for attorney's fees pursuant to § 1988 is collateral to the case on the merits).

Put another way, as explained in Part III.B., a motion for attorney's fees is not a separate federal "claim" in a plaintiff's complaint; in fact, in some cases, such a motion will be filed by a party who has no federal claim.  *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988).  Thus, once the court dismisses Plaintiffs' § 1983 claims as moot, the court will have dismissed "all claims over which it has original jurisdiction," and the court "may decline to exercise supplemental jurisdiction" over the remaining state-law claims.  28 U.S.C. § 1367(c)(3).  *Cf. Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (holding that, when the underlying federal claim has become moot, a party's interest in recouping attorney's fees pursuant to §1988 "is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").

Alternatively, even if it could be found that federal-law claims remain on the mere basis of a possibility that a § 1988 motion for attorney's fees will be filed, the court may dismiss supplemental claims pursuant to 28 U.S.C. § 1367(c)(2) when the state-law claims substantially predominate over the federal claims.  *See Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (holding that the district court has jurisdiction to dismiss supplemental state-law claims when any one of the factors listed in § 1367(c) is present).  "'A federal court will find

substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) (quoting *McNerny v. Neb. Public Power Dist.*, 309 F. Supp. 2d 1109, 1117-18 (D. Neb. 2004)).  Once the remaining federal-law claims have been dismissed  and a motion for attorney's fees is all that is left of the federal case, the motion for attorney's fees (if one is filed) will be a mere collateral appendage, and the state-law claims will comprise the overwhelming "body of the case."  *See Cooter*, 496 U.S. at 395 (holding that motions for costs or attorney's fees are independent, collateral proceedings supplemental to the original proceedings and are not part of the decision on the merits of the case).

Accordingly, pursuant to 28 U.S.C. § 1367(c)(2) and § 1367(c)(3), regardless of Plaintiffs' intent to seek attorney's fees pursuant to § 1988, the court has discretion to dismiss the remaining state-law claims.

**D.**   **The Court Will Decline to Exercise Supplemental Jurisdiction After Dismissing Plaintiffs' § 1983 Claims.**

Dismissal of state-law claims pursuant to 28 U.S.C. § 1367(c)(2) and (c)(3) is not mandatory, but is within a trial court's sound discretion.  *Palmer*, 22 F.3d at 1568.  However, the court's discretion to dismiss the supplemental state-law claims pursuant to § 1367(c)(2) or (c)(3) is to be guided by judicial considerations enumerated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), such as

judicial economy, comity, convenience, and fairness to the parties.  *Id.* at 1569 (holding that factors outlined in *Gibbs* which had not been codified in § 1367(c) remained relevant to the trial court's discretion to dismiss supplemental state-law claims).

Further, in *Gibbs*, the Supreme Court stated that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  383 U.S. at 726. This statement does not create a mandatory, inflexible rule, but the statement does "recognize[] that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

### 1.   *The Running of the Statute of Limitations on the State-law Claims Does Not Support Departure   From the Usual Rule.*

Plaintiffs argue that considerations of fairness support departure from the usual rule of dismissing state-law claims when the federal-law claims are dismissed before trial.  Specifically, Plaintiffs contend that dismissal of their state-

law claims would be unfair because the statute of limitations would bar them from

pursuing those claims in a new action in state court.  (Doc. # 88 at 12.)  However,

Plaintiffs will not be barred from filing a new suit in state court so long as they do

so within a period of thirty days after dismissal.  28 U.S.C. § 1367(d) ("The period

of limitations for any claim [over which the court has supplemental jurisdiction] . .

. shall be tolled while the claim is pending and for a period of 30 days after it is

dismissed unless State law provides for a longer tolling period."); *Jinks v. Richland

Cty., S.C.*, 538 U.S. 456, 459 (2003) ("To prevent the limitations period on such

supplemental claims from expiring while the plaintiff was fruitlessly pursuing

them in federal court, § 1367(d) provides a tolling rule that must be applied by

state courts.").

### 2. *Considerations of Judicial Economy and Preventing Duplication of Effort Do Not Support Departure from the Usual Rule.*

A federal court should retain jurisdiction when the court has already

committed substantial judicial resources to the state-law claims "'so that sending

the case to another court will cause a substantial duplication of effort.'"  *Parker v.

Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006) (quoting *Graf v.

Elgin, Joliet & Eastern Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986), *overruled

on other grounds by Hughes v. United Air Lines, Inc*., 634 F.3d 391, 393-95 (7th

Cir. 2011)).  Plaintiffs contend that, because of the length of time that they have

been litigating and the current procedural posture of the case, this is not "the usual

case" where considerations of judicial economy weigh in favor of declining jurisdiction over the state-law claims.   Specifically, Plaintiffs argue that, if the state-law claims are dismissed and then refiled in state court, resources would be substantially duplicated because "the state court would, no doubt, have to address the same Motion to Dismiss; and, the parties would then have to duplicate the discovery that has already been concluded."  (Doc. # 88 at 13 (sic).)

### ii. There is No Basis for Plaintiffs' Contention that Dismissal Will Require Substantial Duplication of Discovery Efforts.

Plaintiffs note that, with the exception of the deposition of Nancy Buckner, discovery is complete.[6]   However, Plaintiffs have not identified any specific discovery that will need to be duplicated if the case is dismissed and refiled in state court, and they have not cited any legal authority to support their contention that discovery will have to be duplicated.  In the absence of supporting facts or legal authority from Plaintiffs, the court notes that, in general, Alabama rules of evidence and procedure would not necessarily require that discovery taken in this court be duplicated in a state court proceeding on Plaintiffs' remaining state-law

---

[6] On November 19, 2013, eight days before the expiration of the discovery deadline, Defendants moved to stay the deposition of Nancy Buckner pending the resolution of the administrative hearings.  (Doc. # 73.)  In that motion, Defendants stated that they objected to the deposition of Nancy Buckner because she was an executive official with no personal knowledge of the factual basis of Plaintiffs' claims.  (Doc. # 73 at ¶¶ 2-3.)  Plaintiffs moved to compel Nancy Buckner's deposition, arguing in part that she did have personal knowledge of Plaintiffs' federal- and state-law claims.  (Doc. # 74 at ¶ 6).   The Magistrate Judge granted the motion to stay the deposition and denied the motion to compel pending resolution of Defendants' motion to stay the entire case, but he did not enter a ruling on whether Defendants were legally entitled to take Nancy Buckner's deposition.  (Doc. # 75.)

claims.[7]  Thus, it appears that, once the case is refiled in state court, the case would

likely require very little additional discovery and could be ready for trial relatively

quickly after the pleadings close.

Accordingly, the fact that discovery is almost complete does not implicate

concerns of "judicial economy, convenience, fairness, and comity" that would

mitigate against the "usual rule" of dismissing state-law claims when the federal

claims are dismissed before trial.  *Cohill*, 484 U.S. at 350 n.7; *see also Jacoboni v.

KPMG LLP*, 314 F. Supp. 2d 1172, 1180-81 (M.D. Fla. 2004) ("It is true that this

matter has been pending in this court for nearly two years and the undersigned

judge is already familiar with the case. However, only state claims remain, and

considerations of practicality and comity counsel that a state judge is best equipped

to adjudicate those claims.").

### ii.    *Motion Practice in State Court Will Not Require Substantial Duplication of Effort.*

Plaintiffs argue that, if the state-law claims are refiled in state court, the state

court "would, no doubt, have to address the same Motion to Dismiss" as this court

has addressed.  (Doc. # 88 at 13.)  Although the court has ruled on motions to

dismiss, the court has not invested any judicial resources in considering the

---

[7] *See, e.g.*, Ala. R. Civ. P. 32(a)(4) ("[W]hen an action has been brought in any court . . . of the United States . . . and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.").

evidence, merits, or substantive state law underlying Plaintiffs' tort claims. With respect to the state-law claims, the court's substantive rulings on motions to dismiss have involved the following: (1) declining to consider the question of state-agent immunity at the motion-to-dismiss stage  (Doc. # 47 at 23-24); (2) ruling that all claims against DHR and Shelby County DHR were due to be dismissed for lack of subject matter jurisdiction on the basis of sovereign immunity afforded by the Eleventh Amendment and the Alabama Constitution (Doc. # 41 at 14, 40); (3) on grounds of sovereign immunity afforded by the Alabama Constitution, partially dismissing all state-law claims with respect to claims for money damages against Defendants in their official capacities (Doc. # 47 at 23); (4) dismissing a separate "count" for injunctive relief because it was not a cause of action and was due to be dismissed as duplicative of Plaintiffs' request for relief (Doc. # 47 at 24); (5) dismissing the state-law claims against Defendants in their official capacities on the basis of Eleventh Amendment immunity (Doc. # 72); and (6) dismissing state-law claims for injunctive relief against Defendants in their individual capacities as "meaningless" under Alabama law  (Doc. # 72).

Plaintiffs have not identified which, if any, of these issues will require substantial duplication of resources in state court. The substantive issue of state agent immunity has yet to be litigated no matter where the case is tried, but no duplication of resources will be necessary in the process because the issue has not

been substantially litigated in this court.  (Doc. # 47 at 23-24.)  To the extent that the court partially dismissed state-law claims on Eleventh Amendment grounds, those rulings will not be relitigated in state court because the Eleventh Amendment is not the source of the State of Alabama's immunity from state-law tort actions in its own courts.[8]  *Ala. State Docks Terminal Ry. v. Lyles*, 797 So. 2d 432, 436 (Ala. 2001).  To the extent that the parties anticipate relitigating the applicability of sovereign immunity afforded by Alabama law, there is no reason to expect that a state court cannot efficiently dispose of that straightforward issue without the necessity of additional discovery, extensive litigation, or substantial duplication of resources.  Further, only Plaintiffs' own decision to reassert futile claims could cause any delay as a result of revisiting this court's earlier rulings that a count for injunctive relief was due to be dismissed as redundant (Doc. # 47 at 24) or that claims for injunctive relief against state officials acting in their personal capacities are "meaningless" under Alabama law (Doc. # 72).

Moreover, as Plaintiffs note (Doc. # 88 at 13), the parties have already thoroughly briefed the legal issues implicated in the motions to dismiss; thus, if the parties do choose to reassert claims or defenses (including sovereign immunity) that this court has already addressed, there is no reason to expect that any party will need to expend substantial additional resources to reproduce their arguments.

---

[8] Defendants do not argue that they would be prejudiced by the unavailability of Eleventh Amendment defenses to tort claims in state court.

*See Parker*, 468 F.3d at 746 (holding that a federal court should retain jurisdiction when substantial judicial resources have already been devoted to the state-law claims "so that sending the case to another court will cause a *substantial* duplication of effort." (emphasis added; internal quotation marks and citation omitted)).

### iii.    Considerations of Judicial Economy, Comity, Convenience, and Fairness to the Parties Weigh in Favor of Dismissal.

The remaining state-law claims are steeped in questions of state law, state agency procedures, and the interaction between Alabama tort law and Alabama's compelling state interests in family relations and protecting children from harm. Retaining jurisdiction over the state-law claims would require this court to needlessly decide issues of state law and state policy that, as a matter of comity, judicial economy, and the promotion of justice between the parties, are best decided by a state court.  *Gibbs*, 383 U.S. at 726 (holding that a court should decline to exercise supplemental jurisdiction to avoid "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"); *see also Rose v. Rose*, 481 U.S. 619, 625 (1987) ("We have consistently recognized that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" (quoting *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–853, 34 L.Ed.

500 (1890)).

Accordingly, in light of judicial economy, convenience, comity, and fairness to the litigants, the court will dismiss the state-law claims pursuant to § 1367(c)(2) and (3). *Gibbs*, 383 U.S. at 726 ("[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." (footnote omitted)).

## IV.   ATTORNEY'S FEES

42 U.S.C. § 1988 provides that, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . .  the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Plaintiffs argue that they are the prevailing parties because they prevailed at the administrative due process hearings.  Defendants argue that Plaintiffs are not the prevailing parties because Defendants voluntarily provided due process hearings without being ordered to do so by the court, without an agreed[9] settlement, and

---

[9] The letters from DHR notifying Plaintiffs that their cases had been set for administrative hearings did not give them a choice in the matter.  (Doc # 73-1 at 2, 5 ("If [Plaintiffs] cannot attend this . . . investigative hearing, please notify [the ALJ] immediately.  [Plaintiffs] may contact [the ALJ] by mail or by telephone. If [Plaintiffs] fail[] to attend this hearing without good cause after receiving proper notice, and good cause does not exist for adjournment or postponement, the hearing request may be dismissed, or [the ALJ] may proceed with the hearing and make a decision in [Plaintiffs'] absence. Good cause for failure to appear includes, but is not

without entry of a consent decree.

Central to the parties' arguments is *Buckhannon Bd. & Care Home, Inc.v. W. Va. Dep't of Human Res.*, 532 U.S. 598 (2001), in which the United States Supreme Court stated:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

532 U.S. at 600.

Under *Buckhannon*,[10] to be considered a "prevailing party," the party must achieve "a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Id.* at 604 (quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)) (alteration in original). The material alteration in the legal relationship of the parties must be "court-ordered" or have a "judicial imprimatur;" there must be "a judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 603-05. Thus, a judgment on the merits would suffice, as would a "settlement enforced through a consent decree." *Id.* at 604. A consent decree will suffice because, "although a consent decree does

---

limited to, a death in the family, serious personal injury, and sudden and unexpected emergencies.").

[10] *Buckhannon* is generally applicable to all fee-shifting statutes that use the term "prevailing party." *Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1255 (11th Cir. 2006).

not always include an admission of liability by the defendant," it is nonetheless a court order that alters the legal relationship between the plaintiff and the defendant. *Id.* On the other hand, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* at 605.

At the close of discovery, "without admitting liability[] or conceding any defenses in reference to this action,"[11] Defendants voluntarily chose to provide Plaintiffs with due process hearings.  (Doc. # 73 at ¶ 1.)  Further, Defendants sought a stay of the action in this court because they "believe[d] that resolving [the] hearing[s] w[ould] ultimately resolve the underlying due process claim that remain[ed] in this action without further discovery, litigation, or Court involvement."  (Doc. 73 at ¶ 1.)  Defendants "contend[ed] that the requested [stay] complies with the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of the underlying action,' without undue continued litigation."  (Doc. 73 at ¶ 1.)

---

[11] In seeking the stay, Defendants represented to this court that they did not admit liability or concede defenses in this case.  (Doc. 73 at ¶ 1.)  However, as Plaintiffs pointed out in opposition to Defendants' motion to stay (Doc. # 74 at 6), the letters notifying them of the scheduled hearings specifically stated that, "[p]ursuant to Ala. Code 1975 § 26-14-7.1, [Plaintiffs] ha[d] the right to a hearing to contest the Department's findings of indicated child abuse/neglect."  (Doc. 73-1 at 2, 5.)  The letters notifying Plaintiffs that they "ha[d] a right to a hearing" were on DHR letterhead, which included the DHR seal and the words "Nancy T. Buckner, Commissioner." The letters originated from DHR's Administrative Hearings Office and were signed by a DHR ALJ.  DHR sent copies of the letter to Defendant Mashego.  (Doc. 73-1.)

Plaintiffs objected to the motion to stay on grounds that the due process hearings would not provide the injunctive relief they sought to require DHR to change its policies, and on grounds that the due process hearings would not affect Plaintiffs' remaining state-law claims.  (Doc. # 74.)  At the time the court granted the motion to stay, the court did not expressly state its reason for granting the motion over Plaintiffs' objection.  However, it can be inferred from the record – and the court now expressly states – that the stay was granted for the sole reasons stated in Defendants' motion: because "resolving [the due process hearings] w[ould] ultimately resolve the underlying due process claim that remain[ed] in this action without further discovery, litigation, or [c]ourt involvement," and because "the requested [stay] complie[d] with the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of the underlying action,' without undue continued litigation."  (Doc. # 73 at ¶ 1.)

Defendants could have chosen to hold due process hearings with or without a stay of this case.  However, the order granting the stay was not merely an inevitable act of judicial acquiescence to Defendants' unilateral decision to resolve the case without further litigation in this court.  The court could have declined to grant the stay and required the parties to proceed to a judicial resolution.  At the time Defendants moved for the stay, there was a realistic possibility that, if this action had proceeded alongside the administrative process, Plaintiffs' claims could

have been resolved on dispositive motions or by a trial before the administrative process could be completed.  The date originally set for the administrative hearings (January 29, 2014) fell after the discovery and dispositive motion deadlines (November 27, 2013 and January 10, 2014, respectively).  (Doc. # 64; Doc. # 73.) After the court stayed the case, both administrative hearings were postponed until March 13, 2014 (Doc. # 78), then to May 13, 2014 (Doc. # 81).  Plaintiff Kayla Thomas's administrative hearing was held on May 13, 2014, and the ALJ issued a final decision in her case on June 5, 2014.  (Doc. # 86 at ¶ 1; Doc. # 88-1 at 15.) Plaintiff Joan Raney's administrative hearing was continued to August 4, 2014 (Doc. # 83), and the ALJ issued final decision in her case on August 18, 2014. (Doc. # 86 at ¶ 2, Doc. # 88-1 at 24.)  Without the stay, the parties would have proceeded to trial on May 5, 2014.  (Doc. # 64; Doc. # 80.)

Thus, in granting the stay, the court alone determined that, as Defendants requested, the case would be resolved without further litigation or judicial involvement.  However, Plaintiffs do not argue at this time that the order granting the stay over their objection constitutes a "judicial imprimatur" on Defendants' proposed resolution of the due process claims.  This and any other issues related to the motion for attorney's fees need not be decided at this time because no motion for attorney's fees has been filed, and the court will not give the parties an advisory opinion on the matter.  The merits of any motion for attorney's fees will be decided

31

if and when such a motion is filed.

## V.  CONCLUSION

Accordingly, it is ORDERED as follows:

1.    Plaintiff Kayla Thomas's and Plaintiff Joan Raney's remaining 42 U.S.C. § 1983 claims are DISMISSED as MOOT;

2.    Plaintiff Kayla Thomas's and Plaintiff Joan Raney's remaining state-law claims against Defendants Nancy Buckner and Kim Mashego in their individual capacities are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c); and

3.    This case is DISMISSED.

A separate final judgment will be entered.

DONE this 29th day of January, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
